# No. 24-2329

### In the United States Court of Appeals

### for the Second Circuit

DR. LOUIS EMOVBIRA WILLIAMS,

*Plaintiff-Appellee,*

v.

FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL OF
THE FEDERAL GOVERNMENT OF NIGERIA,

*Defendant-Appellants.*

---

On Appeal from the United States District Court
for the Southern District of New York
No. 1:23-cv-7356

## APPELLANT'S BRIEF AND SPECIAL APPENDIX

Gerald O. Egbase
AOE Law & Associates
800 W. 1st Street, Suite 400
Los Angeles, California 90012
Email: ge-aoe@baselaw.net

*Attorney for Defendants - Appellants*
FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL OF
THE FEDERAL GOVERNMENT OF NIGERIA

## Corporate Disclosure Statement

Pursuant to Fed. R. App. P. 26.1, **Defendants - Appellants, FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL OF THE FEDERAL GOVERNMENT OF NIGERIA** makes the following disclosures:

1. For non-governmental corporate parties please list all parent corporations:

None.

2. For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None.

3. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

None.

Dated: November 22, 2024          By: /s/ Gerald O. Egbase

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................i

TABLE OF CONTENTS .............................................................ii

TABLE OF AUTHORITIES ........................................................iv

APPELLANT'S BRIEF ......................................................... 1

   PRELIMINARY STATEMENT ............................................... 1

   JURISDICTIONAL STATEMENT ........................................... 6

   ISSUES PRESENTED ..................................................... 8

   STATEMENT OF THE CASE ............................................... 9

     I.  Factual Background .................................................. 9

       The U.K. Judgment (A 119 – 207) ............................... 11

     II.  Procedural History ................................................ 13

     III.  Standard of Review ............................................... 14

   SUMMARY OF THE ARGUMENT ...................................... 15

   LEGALARGUMENT ..................................................... 17

     I.  The "Explicit Waiver " Exception To The FSIA........................ 17

       Burden ......................................................... 19

       Express Waiver ................................................. 20

     II.  The District Court Misapplied the "Explicit Waiver"
Exception in Contravention of the Standards of This
Court's Standards................................................ 21

       A.  The Court Erred In Concluding That The Defendants
Agreed To Waive Sovereign Immunity In U.S. Courts. ......... 22

       B.  The Forum Selection Clause and Choice-of-Law
Selection within the Fidelity Guarantee make it
Clear That Defendants Did Not Intent to Waive
Sovereign Immunity in United States Courts........................ 25

       C.  The District Court Erroneously Concluded That The
Waivers In The Fidelity Guarantee Are Synonymous
To The Broad Waivers Found In Capital Ventures. ............... 27

III.  The District Court Erred In Concluding That The
      Foreign Judgment (U.K. Judgment) Findings That The
      alleged Fidelity Guarantee Does Not Constitute A
      Waiver of Immunity by Defendants Does Not Preclude
      Plaintiff from Arguing That The Fidelity Guarantee
      Contains A Waiver of Sovereign immunity. ............................... 30

IV.   District Court Erred In Holding That The U.K.
      Judgment Failed To Establish The Specific Body Of
      FSIA Express Waiver Requirements To Have A
      Preclusive Effect On Whether By The Terms Fidelity
      Guaranty, The Defendants Waived Sovereign Immunity. ........ 32

      CONCLUSION ...................................................................... 38

CERTIFICATE OF COMPLIANCE ...................................................... 39

CERTIFICATE OF SERVICE ................................................................ 40

SPECIAL APPENDIX ............................................................................ 41

# Table of Authorities

Page

**Cases:**

*119 Rosset Corp. v. Blimpie of New York Corp.*
  65 A.D.2d 683 (N.Y. App. Div. 1978)  ............................................... 37

*Adler v. Fed. Republic of Nigeria*
  107 F.3d 720 (9th Cir. 1997)  ...................................................... 18

*Aguinda v. Texaco, Inc.*
  175 F.R.D. 50 (S.D.N.Y. 1997)  .................................... 3, 15, 20, 22, 24

*Anglo-Iberia Undg. v. P.T. Jamsostek*
  600 F.3d 171 (2d Cir. 2010)  ...................................................... 14

*Argentine Republic v. Amerada Hess Shipping Corp.*
  488 U.S. 428 (1989)  ............................................................ 19, 26

*Asvesta v. Petroutsas*
  580 F.3d 1000 (9th Cir. 2009)  .................................................... 37

*Atl. Tele-Network Inc. v. Inter-Am. Dev. Bank*
  251 F. Supp. 2d 126 (D.D.C. 2003)  ............................................... 25

*Baglab Ltd. v. Johnson Matthey Bankers Ltd.*
  665 F. Supp. 289 (S.D.N.Y. 1987)  ............................................... 19

*Blue Ridge Invs., L.L.C. v. Republic of Argentina*
  735 F.3d 72 (2d Cir. 2013)  ....................................................... 7

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l
  Drilling Co.*
  581 U.S. 170 (2017)  .............................................................. 19

*Bristol-Myers Squibb Co. v. McNeill-P.P.C., Inc., [McNeil-
  P.P.C., Inc.]*
  973 F.2d 1033 (2d Cir. 1992)  .................................................... 15

*Canadian Overseas Ores Ltd. v. Compania de Acero del
  Pacifico S.A.*
  727 F.2d 274 (2d Cir. 1984)  ..................................................... 14

*Cap. Ventures Int'l v. Republic of Argentina (Capital Ventures)*
  552 F.3d 289 (2d Cir. 2009)  ........................................ 5, 16, 23, 28

iv

*Cargill Int'l S.A. v. M/T Pavel Dybenko*
991 F.2d 1012 (2d Cir. 1993) ........................................... 4, 19, 20, 35

*Carpenter v. Republic of Chile*
610 F.3d 776 (2d Cir. 2010) ........................................... 26

*China Shipping Container Lines Co. v. Big Port Serv. DMCC*
(2d Cir. Mar. 5, 2020) ........................................... 32

*Conopco, Inc, v. Roll Inf 1*
231 F.3d 82 (2d Cir. 2000) ........................................... 30

*Drexel Burnham Lambert v. Comm. of Receivers*
12 F.3d 317 (2d Cir. 1993) ........................................... 14, 15, 19

*Eaglet Corp. v. Banco Cent. De Nicar.*
839 F. Supp. 232 (S.D.N.Y. 1993) ........................................... 25

*Fairchild, Arabatzis & Smith, Inc. v. Prometco*
470 F. Supp. 610 (S.D.N.Y. 1979) ........................................... 35, 36, 37

*Fed. Republic of Germany v. Philipp*
141 S. Ct. 703 (2021)
[592 U.S. 169] ........................................... 19

*Forsythe v. Saudi Arabian Airlines Corp.*
885 F.2d 285 (5th Cir. 1989) ........................................... 19

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*
22 F.4th 83 (2d Cir. 2021) ........................................... 29

*Greene v. U.S.*
79 F.3d 1348 (2d Cir. 1996) ........................................... 32

*Jota v. Texaco, Inc.*
157 F.3d 153 (2d Cir. 1998) ........................................... 3, 20, 24

*Kensington Int'l Ltd. v. Itoua*
505 F.3d 147 (2d Cir. 2007) ........................................... 7, 15, 18

*Lalasis v. Janata Bank*
52 A.D.3d 439 (N.Y. App. Div. 2008) ........................................... 18

*Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*
676 F.2d 47 (2d Cir. 1982) ........................................... 3, 20, 22, 24

*Lockheed Martin Corp. v. Retail Holdings, N.V.*
639 F.3d 63 (2d Cir. 2011) ........................................... 29

*Mar. Ventures Int'l, Inc. v. Caribbean Trading Fid., Ltd.*
689 F. Supp. 1340 (S.D.N.Y. 1988) ..................................................... 20

*Matusick v. Erie Cty. Water Auth.*
757 F.3d 31 (2d Cir. 2014) .......................................... 4, 17, 32, 33, 34

*Metromedia Co. v. Fugazy*
983 F.2d 350 (2d Cir. 1992) ...................................................... 4, 38

*Nicholson v. The Bank of N.Y. Mellon*
(S.D.N.Y. Aug. 28, 2023) ............................................................ 30

*Nikon Inc. v. Ikon Corp.*
987 F.2d 91 (2d Cir. 1993) .......................................................... 14

*Opati v. Republic of Sudan*
140 S. Ct. 1601 (2020) ............................................................... 18

*Pablo Star Ltd. v. Welsh Gov't*
961 F.3d 555 (2d Cir. 2020) .......................................................... 7

*Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*
895 F.3d 194 (2d Cir. 2018) ................................................... 15, 23

*Robinson v. Gov't of Malaysia*
269 F.3d 133 (2d Cir. 2001) ......................................................... 24

*Roby v. Corp. of Lloyd's*
796 F. Supp. 103 (S.D.N.Y. 1992) .................................................. 15

*Roby v. Corp. of Lloyd's*
796 F. Supp. 103 (S.D.N.Y. 1992) .................................................. 26

*Salahuddin V. Jones*
992 F.2d 447 (2d Cir. 1993) ......................................................... 30

*Sassower v. Abrams*
833 F. Supp. 253 (S.D.N.Y. 1993) .................................................. 30

*Saudi Arabia v. Nelson*
507 U.S. 349 (1993) ................................................................. 18

*Scheiner v. Wallace*
832 F. Supp. 687 (S.D.N.Y. 1993) .................................................. 37

*Schuylkill Fuel Corp. v. Nieberg Realty Corp.*
250 N.Y. 304 (1929) ................................................................. 36

*Virtual Countries, Inc. v. Rep. of S. Afr.*
   300 F.3d 230 (2d Cir. 2002)  ............................................................... 24

**Statutes:**

28 U.S.C. § 1441  ............................................................................... 13

28 U.S.C. § 1446  ............................................................................... 13

28 U.S.C. § 1602  ........................................................................ 1, 6, 8

28 U.S.C. § 1603  ............................................................................... 18

28 U.S.C. § 1604  ............................................................................... 18

28 U.S.C. § 1605  ................................... 2, 3, 7, 19, 20, 21, 24, 34

28 U.S.C. § 1607  ............................................................................... 19

28 U.S.C. § 1608  ................................................................................. 6

28 U.S.C. § 1611  ................................................................................. 1

## Appellant's Brief

Defendants-Appellant Federal Government of Nigeria (FGN) and Attorney General of the Federal Government of Nigeria (AG-FGN) (collectively, "Defendants" or "Defendant" respectfully submit this brief in support of its appeal of the district court's Order entered on August 12, 2024, that denied Defendants motion to dismiss all claims of Plaintiff-Appellee Doctor Louis Emovbira Williams ("Plaintiff) complaint on grounds of foreign sovereign immunity and asserted lack of subject matter jurisdiction.

## PRELIMINARY STATEMENT

The district court's ruling, in this case, reframes the grounds for explicit waiver of FSIA's immunity, resulting in dilution of the presumption of immunity to which foreign states, such as the Defendants here, are entitled under the Federal Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C.§§1602–1611.

At issue in this case is (1) the district court's conclusion based on its interpretation of the terms of the executed document with detailed statutory instruction by the sovereign Defendant FGN, directed to the sovereign Defendant's governmental agency (Fidelity Guaranty) [1]. The

---

[1]  U.K. Judgment found that "*On the evidence of the claimant the Fidelity Guarantee is said to be a law or statute, and thus it seems to me must be an exercise of sovereign authority." (A 202) ¶ 16*

Plaintiff's complaint alleges that the document (Fidelity Guarantee) is a prior agreement by the Defendants, and by the terms of the agreement (Fidelity Guarantee), the Defendants agreed to waive sovereign immunity in the United States. (2) The district court declined to enforce the findings within the foreign judgment from the United Kingdom (U.K. Judgment) that the Plaintiff's action seeks to enforce. The U.K. Judgment holds that by the terms of the executed document (Fidelity Guarantee), the Defendants did not agree to waive sovereign immunity.

In a fundamental misapplication of explicit waiver exceptions of the FSIA's immunity, the district court ruled that the Defendants waived FSIA's immunity. Specifically, based on a general term mixed up between a Forum selection clause and a choice-of-law selection clause, the district court erroneously concluded that the Defendants waived its immunity either explicitly or within the terms of " 28 U.S.C. § 1605(a)(l).

Disregarding decades of authorities by the Second Circuit regarding forum selection clause and choice of law selection in evaluating the finding of an explicit waiver, the district court's ruling adopted a new bright-line rule in applying the "explicit waiver" exception to the FSIA. Notwithstanding the forum selection clause and choice of law selection stipulated by the Defendants within the Fidelity Guarantee (executed

document at issue), the district court concluded that by the terms within the Fidelity Guarantee, Defendants contemplated that suit could be brought in the United States. (SPA 21)

Further, in disregarding the findings contained in the foreign judgment which the Plaintiff action seeks to enforce, the district court employed an overly broad standard to disregard the fundamental principles given by Second Circuit courts to foreign judgment under the doctrine of collateral estoppel which operates to bar a party from raising an issue of law or fact in a second suit that the party had a "full and fair opportunity to litigate in [a] prior proceeding and considered conclusive between the parties with regard to all matters essential to sustain the judgment.

The district court's bright-line rule is that any term in an executed document that can be referenced to show that a foreign state contemplated a suit in the United States is sufficient for explicit waiver of FSIA contravenes settled authority in this Circuit. As this Court has held, an express waiver under section 1605(a)(1) must give a "clear, complete, unambiguous, and unmistakable" manifestation of the sovereign's intent to waive its immunity. *Aguinda v. Texaco, Inc.*, 175 F.R.D. 50, 52 (S.D.N.Y. 1997) (collecting cases), vacated on other grounds sub nom. *Jota v. Texaco, Inc.*, 157 F.3d 153 (2d Cir. 1998); see also *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*, 676 F.2d 47, 49 (2d Cir. 1982).

Likewise, this Court has emphasized that waiver provisions are to be interpreted narrowly, and it is rare for a court to find that a country's waiver of immunity extends to third parties not privy to the contract. Waiver will not be implied absent strong evidence of the sovereign's intent; see *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir. 1993).

Further, the district court's overly broad requirement for the foreign judgment to establish all the elements of the body of FSIA Express Waiver in order for the foreign judgment to have a preclusive effect on whether the Defendants waived FSIA sovereign immunity also contravenes the long-standing principle regarding the application of final judgment from prior proceedings. This Court has held that to find the identity of issues within a foreign judgment to have a preclusive effect, the court need not consider or apply domestic law so long as there is ultimately an identity of issues. In other words, "the legal standards to be applied must . . . be identical," but the foreign court need not apply a specific body of law. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 48–49 (2d Cir. 2014) Further collateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a "full and fair opportunity to litigate . . . in [a] prior proceeding" and where "the decision of the issue was necessary to support a valid and final judgment on the merits" in the first action. See *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992).

The district court's error, as detailed herein, derives largely from a misapplication of this Court's ruling in *Capital Ventures v. Republic of Argentina*, 552 F.3d 289, 292 (2d Cir. 2009), which the district court has interpreted as a sea change in FSIA explicit waiver jurisprudence. However, contrary to the provisions within the document at issue in the *Capital venture* case, where the Defendant Republic of Argentina stipulated to the non-exclusive jurisdiction of the local courts in Frankfurt or Buenos Aires, the terms of the document at issue, in this case, provides that the Defendant FGN exclusively stipulated to United Kingdom jurisdiction (forum selection). Based on this understanding, Plaintiff admitted on the verified complaint that the parties agreed that any dispute between the parties would be litigated in the United Kingdom.

Further, by the terms of the executed document at issue in this case, where Defendant stipulated to a choice of law as "English Law to Apply" if Plaintiff is compelled to seek legal redress, the document at issue in the *Capital Ventures* case, reflects that Defendant Republic of Argentina stipulated to U.S. Law (choice of law) in declaring that it irrevocably waives immunity in respect of its obligations under the Bonds denominated in United States dollars ("the U.S. bonds") to the extent it is permitted to do so under applicable law.

Notwithstanding the clear factual dichotomy between this case and *Capital Ventures*, the district court's reliance on *Capital Ventures*, 552

F.3d at 292 was misplaced. For these reasons, and those set forth below, this Court should reverse the district court's decision and dismiss the Plaintiff's complaint with prejudice.

## JURISDICTIONAL STATEMENT

Plaintiff Dr. Louis Emovbira Williams ("Plaintiff") filed this action to recognize and enforce a foreign judgment he obtained in the United Kingdom against defendants Federal Government of Nigeria ("FGN"), the Attorney General of the Federal Government of Nigeria ("AG-FGN"), the Central Bank of Nigeria ("CBN"), and JPMorgan Chase & Co., and other unidentified entities that hold Nigerian Government funds. See. Plf. Compl. (A 8–25)

Defendants FGN and AG-FGN (collectively, Defendants") move, pursuant to Federal Rules of Civil Procedure 12(b)(l), (2), (3), (5), and (6), to dismiss the complaint on the grounds that Defendants as "foreign state" as defined in the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq* are immune from suit under the Foreign Sovereign Immunities Act ("FSIA") and none of the exceptions to immunity set out therein ( § 1602, *et. seq.*) applies. Plaintiff has not properly served the Defendants in the manner required by § 1608 of the FSIA. (A 119–270)

The court denied Defendants motion to dismiss by Opinion & Order entered on August 12, 2024. (SPA 1–47). Specifically, the court found it had jurisdiction under the FSIA's "explicit waiver" exception. The

District held that the Plaintiff showed that by the terms of a document attached to Plaintiff complaint (Fidelity Guarantee) the Defendants waived sovereign immunity, and thus, the Court has subject matter jurisdiction pursuant to section 1605(a)(1) of the FSIA ( SPA 18–19), ¶ 3, ¶ 1.

Defendants timely filed its notice of appeal on August 28, 2024, (A 392). Defendant appealed as of right, as enumerated in *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 81 (2d Cir. 2013) (collateral order doctrine)

This Court "ha[s] appellate jurisdiction under the collateral order doctrine, which 'allows an immediate appeal from an order denying immunity under the FSIA.'" *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 559 n.5 (2d Cir. 2020) (quoting *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007)).

# ISSUES PRESENTED

1. Whether the District Court application of the FSIA's" explicit waiver " exception erred in finding that Defendant FGN waived its sovereign immunity pursuant to the waiver exception codified in 28 U.S.C. section 1602(a)(1) of the Foreign Sovereign Immunities Act (FSIA) under the circumstances of this case and contrary to the weight of federal decisional authorities.

2. Whether the district court erred in concluding that the document (Fidelity Guarantee) contains a clear and unambiguous explicit waiver of sovereign immunity in the United States or any courts at odds with the detailed forum selection clause of the United Kingdom and choice of English law detailed in the Fidelity Guarantee.

3. Whether the District Court erroneously concluded that the foreign judgment (First U.K. Judgment) ruling that the alleged Fidelity Guarantee does not constitute a waiver of immunity by Defendants, has no preclusive effect because the foreign judgment did not purport to address the questions relevant to the FSIA.

4. Did the district court erred in finding that collateral estoppel did not apply to bar the Plaintiff's waiver argument because the Issues that generated the First U.K. Judgment's ruling that the alleged Fidelity Guarantee does not constitute a waiver of immunity by Defendants are not identical to the FSIA Immunity Act's requirements.

5. Did the District Court make an error in concluding that the First U.K. Judgment relied only upon paragraph 21 of the Fidelity Guarantee and analyzed only whether the document constituted a" prior written agreement" under the U.K. Immunity Act.

## STATEMENT OF THE CASE

### I.  Factual Background

Plaintiff Dr. Louis Emovbira Williams ("Plaintiff) filed this action in the Supreme Court of the State of New York, County of New York on June 26, 2023, to recognize and enforce a foreign judgment he obtained in United Kingdom against defendants the Federal Government of Nigeria ("FGN"), the Attorney General of the Federal Government of Nigeria ("AG-FGN"), the Central Bank of Nigeria ("CBN"), and JPMorgan Chase & Co., and other unidentified entities that hold Nigerian Government funds. See. Plf. Compl. (A 8–25)

The plaintiff's complaint seeks to enforce the default judgment he obtained from the United Kingdom on November 9, 2018 ("U.K. Judgment or " U.K. default judgment"), against Nigeria, in the sum of $21,231,960.74 and £19,763.130. Plaintiff incorporated details of U.K. Judgment into the complaint and attached the transcript of the U.K. Judgment and the corresponding court Order from the U.K. court into the complaint and annexed then into the complaint respectively as Exhibit G and Exhibit H., (A 110–118). Also see. (A 119–207) *(Transcript of U.K. Judgment and court Order further attached to Defendants Motion to Dismiss).*

Plaintiff's complaint alleges that he is a Nigerian residing in London and that in the year 1986 he was tricked into a fraudulent transaction

by a certain London solicitor named Mr. Reuben Gale who Plaintiff claimed was secretly acting on behalf of the Nigeria State Security Services (A 13–14) ¶¶ 32–33. Plaintiff claimed that during the transaction he gave Mr. Gale the sum of US $6,520,190 in Trust, as funds required to consummate the transaction. He asserts that the transaction resulted in his arrest, trial and a 10 year prison sentence in Nigeria. He also alleged that the funds he gave to Mr. Gale were transferred to the Central Bank of Nigeria and subsequently frozen by the Defendants. (A 14–15), ¶ 34; ¶ 40. Plaintiff alleged that in 1989 he escaped from Nigeria and returned to London his adopted home. (A 14), ¶ 35.

Plaintiff claims that thereafter, Defendant FGN pardoned him on August 23, 1993, and issued a Fidelity Guarantee dated September 29, 1993, requiring his funds seized by the Defendants together with punitive interest be paid to him. (A 14–15) ¶¶ 36–41. Plaintiff incorporated the terms and attached a copy of the alleged Fidelity Guarantee to the Plaintiff's complaint as Exhibit B ((Exh. 3)) (A 47 –54)[2]

---

[2]    "At the pre-answer motion to dismiss, the allegations in the complaint are assumed to be true for the purposes of Defendants motion. However, the Defendants reserved their rights to demonstrate that the purported Fidelity Guarantee is a forged document and not a document issued or authorized by the Nigerian Government or the Central Bank of Nigeria, should the matter proceed beyond motion to dismiss.."

Plaintiff claimed that since Defendant FGN failed to comply with the payment terms of the Fidelity Guarantee, he filed an action before the High Court of Justice, Queen's Bench Division, Commercial Court, (U.K. Action) against the Defendants on Feb. 29, 2016. On the U.K, action Plaintiff sought relief under two alternative claims.

### The U.K. Judgment (A 119 – 207)

The U.K. default judgment enumerates the Plaintiff's action in the U.K. as follows:

> "The claim in this case is set out at paragraph 46 of the Particulars of Claim. In essence, the claimant seeks an order against the defendant that it should make payment pursuant to obligations under the Fidelity Guarantee and, in the alternative, the claimant brings a claim against the defendant that it is liable to account as a trustee for what it terms a dishonest breach of a 1986 trust. That is in relation to monies which were received by a solicitor, Mr Gale, and which the claimant says were then misappropriated." See (A 201 – 202), ¶13,

On November 9, 2018, the U.K. court conducted an evidentiary hearing on Plaintiff's request to enter a default judgment and denied the Plaintiff's application for default judgment on the claim against the Defendant to make payment pursuant to obligations under the Fidelity Guarantee.

The U.K. Judgment further ruled that (i) ruled that the alleged Fidelity Guarantee does not constitute a waiver of immunity by Defendants; (ii) ruled that the alleged Fidelity Guarantee is not an agreement between the Plaintiff and State (Defendant Nigeria), but rather a law or statute directed to the State's institution in apparent exercise of sovereign authority; and, (iii) denied the Plaintiff's action based on the obligations under the Fidelity Guarantee against the Defendant and therein substantiating that based on the alleged Fidelity Guarantee, Plaintiff has no viable claim against the Defendants. (A 201 – 203), ¶¶ 9–19

As enumerated in the U.K Judgment, Plaintiff's action, based on the Fidelity Guarantee is barred by Sovereign immunity. The court found that contrary to the Plaintiff's allegations, the Fidelity Guarantee does not substantiate that the defendants agreed to waive immunity. (A 201 – 203), ¶¶ 9–19.

However, the U.K. Court proceeded to enter a default judgment against the Defendants only on the Plaintiff's alternate action for Defendants contractual liability for breach of 1986 Trust for the monies Plaintiff claimed he gave to Mr. Gale in Trust and then was misappropriated. (A 203 – 204), ¶¶ 18–23.

The U.K. Judgment and corresponding order following the U.K. Judgment also held that that Defendants have agreed to a manner of service to hand over the Pleadings to the Nigeria Foreign Affairs Minister in the U.K. (A 203 – 204), ¶¶ 21–22; (A 207), ¶¶ 1.

Notwithstanding the findings in the 2018 U.K. default Judgment, Plaintiff commenced a civil action in New York by filing a verified complaint riddled with subjective characterization and unsubstantiated conclusions expressly contradicted by fundamental findings in the U.K. default Judgment, incorporated as the substance of the Plaintiff's complaint.

## II.   Procedural History

On June 26, 2023 Plaintiff filed a complaint in the Supreme Court of the State of New York, County of New York on June 26, 2023. ( A 8 – 25). On August 18, 2023, the Central Bank filed a notice of removal and an amended notice of removal pursuant to 28 U.S.C. sections 1441(d) and 1446 (a), (b) and (d). *(Dkt. Nos. 1, 3)*. On August 21, 2023, the remaining defendants moved to join the Central Bank's amended notice of removal. *(Dkt. No. 10)*. The Court granted the motion for joinder on September 15, 2023.

On September 19, 2023 Defendants FGN and AG-FGN filed a motion to dismiss Plaintiff's complaint. (*Dkt. No. 17)*. On October 6, 2023, Defendants filed an amended motion to dismiss along with a supporting

memorandum of law supporting declarations of Counsel Gerald Egbase and Counsel Gromyko Amedu. (A 119 – 270). On November 21, 2023, Plaintiff filed a memorandum of law in opposition to the motion to dismiss ( A 271- 302). Defendants filed a reply memorandum of law on December 8, 2023, (A 303 - 324). On January 14, 2024, Plaintiff filed a letter attaching the Second U.K. Judgment and Second U.K. Order as supplemental authorities. (A 325 - 340). Defendants filed a letter in response to Plaintiffs letter of supplemental authority on January 17, 2024. (A 341 – 344).

## III.  Standard of Review

This Court "review[s]a district court's decision concerning subject matter jurisdiction under the FSIA for clear error as to factual findings and de novo as to legal conclusions." *Anglo-Iberia Undg. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010), As to the waiver issue, while we have recognized some discretion on the part of district courts to determine whether a waiver of FSIA immunity has occurred in a particular case, see *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 278 (2d Cir. 1984), a review for abuse of discretion yields the same outcome in this case, because "[a]buse of discretion can be found if the district court incorrectly applied the law." *Drexel Burnham Lambert v. Comm. of Receivers*, 12 F.3d 317, 324 (2d Cir. 1993) (*citing Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993)

( *Bristol-Myers Squibb Co. v. McNeill-P.P.C., Inc., [McNeil-P.P.C., Inc.],* *973 F.2d 1033, 1038 (2d Cir. 1992)*). "In determining whether an exception to the FSIA applies, the district court can and should consider matters outside the pleadings relevant to the issue of jurisdiction,' and we do the same on appeal." *Petersen Energia Inversora S.A.U. v.* *Argentine Republic & YPF S.A.*, 895 F.3d 194, 203– 04 (2d Cir. 2018) (quoting *Kensington Int'l Ltd. v. Itoua,* 505 F.3d at 153).

## SUMMARY OF THE ARGUMENT

The district court ruled that the Defendants are subject to jurisdiction in the United States based on an improper application of the FSIA's "explicit waiver" exception. Contrary to this Court's rulings in *Roby v. Corp. of Lloyd's*, 796 F. Supp. 103, 106 (S.D.N.Y. 1992) *Aguinda v. Texaco, Inc.*, 175 F.R.D. at 52*, (citing Drexel Burnham Lambert v. Comm. of Receivers,* 12 F.3d at 325–26 the district court failed to consider the fundamental factors relevant to whether the explicit waiver exception applies-namely, whether the representation in the executed document when read as whole shows that the Defendant intents to waive sovereign immunity in United States courts.

The executed document (Fidelity Guaranty) explicitly detailed a forum selection clause and a choice-of-law selection clause imposing an explicit geographical limitation to waiver of immunity only to United

Kingdom (U.K.) Courts with a corresponding choice of law selection (English Law to apply). As a result, the district court should have found the "explicit waiver" exception inapplicable.

Disregarding the explicit forum selection and choice-of-law selection, the district court relied on the equivocal term "or any other country" interposed between a forum selection clause and choice-of-law selection to conclude that Defendant contemplated that suit could be brought in the United States. (SPA 21), ¶*2*

The court also predicated its ruling on a bright line rule based on the holding from *Capital Ventures Int'l v. Republic of Argentina*, 552 F.3d 289 295, that notwithstanding the forum selection clause and choice of law selection, the term "or any other country," within the executed document suffices to show that Defendants contemplated that suit could be brought in the United States. In concluding that the executed document (Fidelity Guarantee) established that the Defendants intended to waive sovereign immunity in the United States, the district court failed to consider the context of the entire integrated Fidelity Guarantee (executed document) and therein improperly rendered the Defendants' forum clause and choice of law selection meaningless.

Under all circumstances, the district court misapplied the "explicit waiver" exception. Consequently, this Court should reverse the lower court's decision.

Further, the district court committed a reversible error for additional reasons described below. While the foreign judgment that Plaintiff action seeks to enforce holds that by the terms within the executed document (Fidelity Guarantee), the Defendants did not waive sovereign immunity, the district court summarily deemed that findings contained in the foreign judgment do not preclude or bar the Plaintiff contention that the Defendants agreed to waive sovereign immunity.

The district court employed an overly broad standard in requiring the foreign judgment to have established all the elements within the body of FSIA Express Waiver in order for the foreign judgment to have a preclusive effect on whether the Defendants waived FSIA sovereign immunity.

The district court conclusion contravenes the long-standing principle regarding the applying final judgment from foreign judgment as enunciated by this court in *Matusick v. Erie Cty. Water Auth.*, 757 F.3d at 48–49 (In other words, "the legal standards to be applied must . . . be identical," but the foreign court need not apply a specific body of law ).

## LEGALARGUMENT

### I.  The "Explicit Waiver " Exception To The FSIA

As a baseline rule, the FSIA holds that foreign states and their instrumentalities are immune from the jurisdiction of federal and state

courts, see *Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1605 (2020); also see. *Lalasis v. Janata Bank*, 52 A.D.3d 439, 440 (N.Y. App. Div. 2008); By its terms, the FSIA immunizes "foreign state[s]" from the jurisdiction of U.S. courts. 28 U.S.C. § 1604. "Foreign state" is defined to include "an agency or instrumentality of a foreign state." *Id*. 28 U.S.C. § 1603(a)).

It is clear that the Federal Government of Nigeria is plainly a foreign state to which the FSIA applies.[3] *See Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 723 (9th Cir. 1997).

Courts have consistently held that an action against a foreign sovereign for recognition of a foreign judgment is subject to the FSIA. *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147 ($100 million London High Court judgment);

FSIA provides the sole basis for obtaining jurisdiction over a foreign sovereign in the federal and state courts of the United States. See. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Since Section 1604 of the FSIA states the bedrock presumption of foreign sovereign immunity, the jurisdictional immunity in 28 U.S.C. section 1604 is

---

[3]  Plaintiff's complaint concedes that Defendant Federal Government of Nigeria (FGN) is a sovereign foreign state. *See Compl.* (A 10) ¶ *11. (FGN ......"duly constituted and universally acknowledged central sovereign government of Nigeria")*. Likewise the complaint further concedes that the office of AG-FGN is being sued in an official capacity for actions taken in official capacity, ( A 10), ¶ 12 (AG-FGN...*is the office of the duly constituted head of the Federal Ministry of Justice of Nigeria. The Attorney General is named in their official capacity*).

unqualified; if none of the specific exceptions in §§ 1605–1607 apply, there is no subject-matter jurisdiction. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).

The FSIA is to be interpreted to the extent possible to avoid "producing friction in our relations with [other] nations and leading some to reciprocate by granting their courts permission to embroil the United States in expensive and difficult litigation." *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 714 [592 U.S. 169] (2021) (quoting *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 183 (2017) (alteration in original) (internal quotation omitted)).

### *Burden*

[o]nce the defendant presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with showing that, under exceptions to the FSIA, immunity should not be granted, *Baglab Ltd. v. Johnson Matthey Bankers Ltd.*, 665 F. Supp. 289, 293–94 (S.D.N.Y. 1987), although the ultimate burden of persuasion remains with the alleged foreign sovereign. *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n. 6 (5th Cir. 1989).

*Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d at 1016; *see also Drexel Burnham Lambert v. Comm. of Receivers*, 12 F.3d at 1380–81 (discussing burden shifting in FSIA cases).

### Express Waiver

In this case, the district court relied on the "explicit waiver " exception of 28 U.S.C. section 1605(a)(1), more particularly the district court concluded that the executed document (*Fidelity Guarantee) expressly states that Plaintiff may alternatively bring suit in "any other country," thus contemplating that suit could be brought in the United States. (SPA 21)*

An express waiver under 28 U.S.C. section 1605(a)(1) must give a "clear, complete, unambiguous, and unmistakable" manifestation of the sovereign's intent to waive its immunity. *Aguinda v. Texaco, Inc.*, 175 F.R.D. at 52 (collecting cases), vacated on other grounds sub nom. *Jota v. Texaco, Inc.*, 157 F.3d 153; see also *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*, 676 F.2d at 49 (holding that explicit waiver must show "clear and unambiguous intent" to waive immunity)). Also See *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d at 1017 (Waiver will not be implied absent strong evidence of the sovereign's intent. In *Mar. Ventures Int'l, Inc. v. Caribbean Trading Fid., Ltd.*, 689 F. Supp. 1340, 1351 (S.D.N.Y. 1988), the court warned that a broader interpretation "would result in a vast increase in the jurisdiction of the federal courts over matters involving sensitive foreign relations."

## II. The District Court Misapplied the "Explicit Waiver" Exception in Contravention of the Standards of This Court's Standards.

Reversal of the district court's decision is required because the court misapplied the "explicit waiver" exception under the FSIA. Specifically, in evaluating the finding of an explicit waiver, the district court adopted a vague, general, and conclusory term within the executed agreement (Fidelity Guarantee) mixed up between a Forum selection clause and a choice-of-law selection clause to erroneously conclude that the Defendants waived its immunity either explicitly within the terms of " 28 U.S.C. § 1605(a)(l).

Notwithstanding the forum selection clause and choice-of-law selection stipulation by the Defendants within the executed documents, the district court adopted a new bright-line rule in applying the "explicit waiver" exception to the FSIA. It concluded that Defendants contemplated "that suit could be brought in the United States." (SPA 21), ¶ 2. Based on the standard principle established in this court, mere contemplation "that suit could be brought in the United States" is insufficient to find an explicit waiver in this court section 1605(a)(1). Instead, to find an express waiver under section 1605(a)(1), there must be a "clear, complete, unambiguous, and unmistakable" manifestation

of the sovereign's intent to waive its immunity *Aguinda v. Texaco, Inc.*, 175 F.R.D. at 52; <u>see also</u> *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*, 676 F.2d at 49.

### A. The Court Erred In Concluding That The Defendants Agreed To Waive Sovereign Immunity In U.S. Courts.

The Fidelity Guarantee (A 47–54) is the executed document subject to evaluation for the finding of an explicit waiver in his action. Plaintiff, in interlineating his understanding of the terms detailed in the Fidelity Guarantee into Plaintiff's verified complaint, admits that "*the Nigerian Government Defendants agreed in writing to submit to the jurisdiction of the Courts of the United Kingdom for the underlying dispute between the Parties,*" and that all the transactions and resources of the Defendants are located in the United Kingdom *see. Compl.* (A 11–12), ¶¶ *17–19*.

By the terms of the executed document at issue in this action (Fidelity Guarantee), Defendants stipulated to the jurisdiction of the United Kingdom (U.K.) (forum selection clause) and by expressly stating that "*English Law is to apply*" if Plaintiff is to seek legal remedies, the Defendants expressly stipulated to a choice-of-law-selection.[4]

---

[4]    Though the Defendants did not emphasize the choice-of-law-selection in the pleading (Motion to Dismiss), in determining whether an exception to the FSIA applies, the district court can and should consider

22

Specifically, the relevant part of the Fidelity Guarantee states in ¶ *21* (A 53),

> "(21) In the unlikely event. if and when Dr Williams is constrained to take legal proceedings to secure and enforce the release of his monies in ( 14) above the FMG orders and CBN herein agrees that:
>
> (i) It would be a matter for Dr Williams to make a choice of his forum for that purpose be it the UK or Nigeria or any other country.
>
> (ii) (2} English Law is to apply in (21) (i) above."

In an overly broad interpretation of the findings from *Capital Ventures*, 552 F.3d at 295, the district court disregarded the expressed forum selection stipulation and choice-of-law selection detailed within the alleged executed document (Fidelity Guaranty) in concluding that "the mention of specific, non-United States jurisdictions" does not preclude a finding that the foreign state "waived its sovereign immunity to suit in the United States" because "a waiver of sovereign immunity can be explicit even when other provisions of the document are applicable only to specific, non-United States jurisdictions." (SPA 21), ¶2. The district court erroneously reasoned that Fidelity Guarantee does not merely mention that a suit may be brought in a non-United

---

matters outside the pleadings relevant to the issue of jurisdiction,' and we do the same on appeal." *Petersen Energia Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d at 203– 04.

States jurisdiction; it expressly states that Plaintiff may alternatively bring suit in "any other country," thus contemplating that suit could be brought in the United States. (SPA 21), ¶2 . **Vague, General and Conclusory Terms are insufficient for FSIA waivers**

An express waiver under section 1605(a)(1) must give a "clear, complete, unambiguous, and unmistakable" manifestation of the sovereign's intent to waive its immunity. *Aguinda v. Texaco, Inc.*, 175 F.R.D. at 52 (collecting cases), vacated on other grounds sub nom. *Jota v. Texaco, Inc.*, 157 F.3d 153; see also *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.*, 676 F.2d at 49 (holding that explicit waiver must show "clear and unambiguous intent" to waive immunity). See *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 146 (2d Cir. 2001) (holding that plaintiffs cannot "circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations"). Also see. *Virtual Countries, Inc. v. Rep. of S. Afr.*, 300 F.3d 230, 235 (2d Cir. 2002) (upholding dismissal under FSIA where jurisdictional assertions were "entirely conclusory");

In this case, the equivocal term "*any other country*" interposed within a forum clause and choice of law selection (be it the U.K. or Nigeria or any other country" and "English Law is to apply.") is vague, ambiguous, unintelligible as framed, and not an unmistakably manifestation of Defendants intent to waive its immunity beyond U.K or Nigeria jurisdictions where English law applies.

24

### B. The Forum Selection Clause and Choice-of-Law Selection within the Fidelity Guarantee make it Clear That Defendants Did Not Intent to Waive Sovereign Immunity in United States Courts.

It is unequivocal that by imposing an explicit geographical limitation to a waiver of immunity to only the United Kingdom (U.K.) jurisdiction with a corresponding choice of law selection, the defendants did not intend to waive immunity in the United States. See *Atl. Tele-Network Inc. v. Inter-Am. Dev. Bank*, 251 F. Supp. 2d 126, 133 (D.D.C. 2003) (finding that a broad, non-geographically limited waiver of immunity, when "juxtapos[ed] immediately below a choice-of-law selection clause (specifying the law of Guyana) and above a forum-selection clause (specifying the courts of Guyana)," does not waive immunity in the United States). Also see. *Eaglet Corp. v. Banco Cent. De Nicar.*, 839 F. Supp. 232, 234 (S.D.N.Y. 1993) (finding no explicit waiver where jurisdictional clause stated "[t]his Agreement is governed by English law and therefore BCN submits to the nonexclusive jurisdiction of the English High Court of Justice"); *Atl. Tele-Network Inc. v. Inter-Am. Dev. Bank*, at 133 (finding that a broad, non-geographically limited waiver of immunity, when "juxtapos[ed] immediately below a choice-of-law selection clause (specifying the law of Guyana) and above a forum-selection clause (specifying the courts of Guyana)," does not waive immunity in the United States).

The clause (*be it the UK or Nigeria or any other country" and "English Law is to apply*"), read literally, it does not purport to waive Defendants immunity to any forum beyond the U.K., or Nigeria where English Law applies. The Defendants, having expressly selected the forum for any litigation between the parties to be limited to U.K. jurisdiction with a further stipulation to choice of law, the vague, general, and conclusory term within the clause "any other country" fails to specifically clearly or ambiguously express Defendants waiver intentions required to satisfy the FSIA explicit waiver standards. In *Roby v. Corp. of Lloyd's*, 796 F. Supp. 103, 106 (S.D.N.Y. 1992), the Second Circuit reinterated that were executed documents specify the application of English law and the disposition of disputes in England, and because the documents were all executed in England, English law applies. Vague or general terms are insufficient for FSIA waivers, the language must specifically address waiver intentions to avoid being ambiguous. U.S. Supreme Court cautioned in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. at 442 that federal courts should not lightly imply a waiver based upon ambiguous treaty language. See also *Carpenter v. Republic of Chile*, 610 F.3d 776, 779 (2d Cir. 2010) (waiver by treaty must be "clear and unambiguous" and treaty adherence did not qualify).

### C. The District Court Erroneously Concluded That The Waivers In The Fidelity Guarantee Are Synonymous To The Broad Waivers Found In Capital Ventures.

The district court erred in concluding that the provisions of ¶¶ 19–21 of the Fidelity Guarantee (A 53–54) as detailed below "contains a clear and unambiguous waiver of sovereign immunity with respect to any proceedings in "any" jurisdiction to enforce "any" judgment in relation to the Nigerian Defendants' obligations to return Plaintiffs funds.

As detailed by the district court, relevant section of ¶¶ 19–21 of the fidelity Guarantee ((A 53–54), ¶¶ 19–21, provides that:

> "In any proceedings in any jurisdiction to enforce any judgement obtained in relation to [paragraph] (14)l1°l both the CBN and the Nigerian State shall refrain from raising any objection on the grounds that Dr Williams is precluded from levying execution on funds of CBN merely because the funds are funds of Nigerian State and/or Central Bank. Therefore for the avoidance of doubt, both the Nigerian State and CBN must be deemed to have waived any immunity from levying of execution on amount kept in the name of CBN or State of Nigeria or any institution of Nigeria (save diplomatic) to the extent to which any amount in [paragraph] (14) above remains unpaid. Neither the Nigerian State nor the CBN shall raise or invoke any defences so as to deprive Dr Williams of his monies in [paragraph] (14) above or make it financially onerous and burdensome such as requiring Dr Williams to ... suffer from CBN's objections or pleadings such as effluxion of time, acts of state, state privileges, state secrecy and state immunities and the like. All these defences and the like shall be deemed to have been waived without any equivocation and doubt whatsoever.)

(SPA 19) (quoting Fidelity Guarantee ((A 53– 54), ¶¶ 1

While the context detailed within ¶¶ 19–21 of the Fidelity Guarantee, as detailed above, indicates an attempt to waive sovereign immunity, the waiver is extremely limited by the Defendant's expressed geographical limitation to U.K. Jurisdiction and further qualified by the Defendant's stipulated choice of law selection. This Court in *Capital Ventures*, 552 F.3d at 295–96 stated that *(foreign states may avoid waiver where mention of a non-US. jurisdiction or choice of law makes it clear "that there is no intent to waive sovereign immunity in United States courts").*

In *Capital Ventures*, 552 F.3d at 292, by waivers and stipulations, Republic of Argentina (sovereign) waived local jurisdiction (stipulated to non-exclusive jurisdiction of the local courts in Frankfurt or Buenos Aires) and stipulated to U.S. Law (choice of law) in declaring that it irrevocably waives immunity in respect of its obligations under the bonds denominated in United States dollars ("the U.S. bonds") to the extent it is permitted to do so under applicable law. Contrary to the waivers and stipulation in *Capital Ventures*, in this case, Defendant FGN exclusively stipulated to United Kingdom jurisdiction (forum selection) and further stipulated to a choice of law selection in stating "English law to apply" if Plaintiff has to institute a litigation.

Acknowledging the unique facts that generated the ruling in *Capital Ventures* case, the court in *Capital Ventures*, 552 F.3d at 295–96 stated

28

that " of course it is true that there will be cases in which, when a document mentions a non-U.S. jurisdiction, there will be no explicit waiver for FSIA purposes because it will be clear that there is no intent to waive sovereign immunity in United States courts". The facts detailed in the Fidelity Guarantee in stipulating to the United Kingdom (U.K.) jurisdiction (forum) coupled with a choice of law (English Law), accurately present the scenario where the executed document clearly signifies that the Defendants have no intent to waive sovereign immunity in United States courts.

The District Court erred in failing to consider the context of the entire integrated Fidelity Guarantee. Instead, it relied on unwarranted, vague, generalized, and conclusory terms mixed up within the forum and choice of law clause to improperly render Defendant's forum clause and choice of law selection meaningless. It is rooted in the established doctrines of contract or written documents interpretation by the courts that object of a written document must be understood by examining the context of the entire integrated document giving effect to all the provisions, See. *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.,* *22 F.4th 83, 95 (2d Cir. 2021)* "When ascertaining the meaning of contractual language, "it is important for the court to read the integrated agreement 'as a whole.' " *Lockheed Martin Corp. v. Retail* *Holdings, N.V.,* 639 F.3d 63, 69 (2d Cir. 2011) .

### III. The District Court Erred In Concluding That The Foreign Judgment (U.K. Judgment) Findings That The alleged Fidelity Guarantee Does Not Constitute A Waiver of Immunity by Defendants Does Not Preclude Plaintiff from Arguing That The Fidelity Guarantee Contains A Waiver of Sovereign immunity.

"Dismissal under Fed.R.Civ.P. 12(b)(6) is appropriate when a defendant raises claim preclusion or .. . statutory waiver and bar as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff s claims are barred as a matter of law." *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.17 (S.D.N.Y. 1993) (citing, *inter alia, Salahuddin V. Jones*, 992 F.2d 447, 449 (2d Cir. 1993)); see *Conopco, Inc, v. Roll Inf 1*, 231 F.3d 82, 86 (2d Cir. 2000) also see. *Nicholson v. The Bank of N.Y. Mellon*, 11 (S.D.N.Y. Aug. 28, 2023) "It is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion."

The district court erred in concluding that the First U.K. Judgment is not preclusive of the issue presented here of whether the Nigerian Defendants' waiver of sovereign immunity is clear and unambiguous for the purposes of the FSIA, because the U.K. Judgment did not purport to address the questions relevant to the FSIA-whether the waiver of

sovereign immunity in the Fidelity Guarantee was anything other than clear and unambiguous and whether the waiver was limited to the courts of the United Kingdom. (SPA 24), ¶ 2

The court reasoning that the U.K. Judgment did not purport to address the questions of whether the waiver of sovereign immunity in the Fidelity Guarantee was anything other than clear and unambiguous is unsubstantiated, at best speculative since the U.K. Judgment admittedly resulted from the U.K. court examination of the Fidelity Guarantee, Plaintiff's oral testimony, and Plaintiff's affidavits. (A 200–204) ¶¶1–3, 9–24; (A 206–207), ¶ 1

The district, lacking all the evidentiary facts that generated the U.K. Judgment, could not have logically concluded that the ultimate finding by the U.K. Judgment did not purport to address the questions of whether the waiver of sovereign immunity in the Fidelity Guarantee was anything other than clear and unambiguous. Further, having found that the detailed terms in the alleged Fidelity Guarantee do not constitute a waiver of immunity by Defendants even under the selected forum clause (U.K. Jurisdiction), it was futile for the U.K. court to decide whether the waiver it has determined not to exist, is limited to the courts of the United Kingdom or otherwise to any other jurisdiction.

**IV. District Court Erred In Holding That The U.K. Judgment Failed To Establish The Specific Body Of FSIA Express Waiver Requirements To Have A Preclusive Effect On Whether By The Terms Fidelity Guaranty, The Defendants Waived Sovereign Immunity.**

To find identity of issues a foreign court need not consider or apply domestic law so long as there is ultimately an identity of issues. In other words, "the legal standards to be applied must . . . be identical," but the foreign court need not apply a specific body of law. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d at 48–49 (cit. omitted); *see also Greene v. U.S.*, 79 F.3d 1348, 1353 (2d Cir. 1996). Here, the legal standards applied were substantively the same and the agency principles applied by the Singapore court are in accord with New York agency law. Accordingly, there is an identity of issues. *China Shipping Container Lines Co. v. Big Port Serv. DMCC*, 5 (2d Cir. Mar. 5, 2020)

The U.K. court having reviewed and decided that the substantive clause in the Fidelity Guarantee (executed document) does not constitute a waiver of sovereign immunity by the Defendants, the district court's conclusion in this case that the findings of the U.K. Judgment do not have a preclusive effect to the issue of whether the Defendants waived sovereign immunity because it did not find whether the waiver is clear and unambiguous within the provision of FSIA

unduly demands the U.K. judgment to detail its analytical evaluation of each element within the specific body of FSIA as it relates to explicit waiver.

The district court rationale adopted overly broad standards beyond the standards employed by the second circuit in evaluating the preclusive effect of a foreign judgment. See *Matusick v. Erie Cty. Water Auth.*, 757 F.3d at 48–49

In further requiring the U.K. Judgment to have shown that it applied every specific body FSIA waiver to be identical, the district court erroneously concluded that FSIA does not share the U.K. Immunity Act's requirements because U.K. Immunity Act' requires that waiver be reduced to writing and that it take the form of an agreement. (SPA 24–25).

As detailed in the U.K. Judgment, (A 202), ¶14 in particular, Section 2 of the U.K. Immunity Act in relevant part states that:

> 14. Dealing with the issue of state immunity, there are two bases on which the defendant might assert immunity in this case. Section 2 of the State Immunity Act states that:
>
> "(l) A State is not immune as respects proceedings in respect of which it has submitted to the jurisdiction of the courts of the United Kingdom.
>
> (2) A State may submit after the dispute giving rise to the proceedings has arisen or by a prior written agreement; but

a provision in any agreement that it is to be governed by the law of the United Kingdom is not to be regarded as a submission. "

(A 202) quoting U.K. Judgment ((A 199–205), ¶ 14

Part (2) of Section 2 of the U.K. Immunity Act stating that "A State may submit after the dispute giving rise to the proceedings has arisen or by a prior written agreement" is synonymous with FSIA waiver clause, which provides that a foreign state is not entitled to immunity where it "has waived its immunity either expressly or by implication" (28 U.S.C. § 1605(a)(1)). While Plaintiff asserted in the complaint in the U.S. action that Defendants agreed to waive sovereign immunity by prior written agreement (Fidelity Guarantee) (A 12),¶ 21, the U.K. Judgment dismissed Plaintiff's contention that Defendant agreed to waive sovereign immunity by prior writing agreement (Fidelity Guaranty) after an evidentiary hearing and exhaustive review of the Fidelity Guarantee. (A 200–204), ¶¶ 9–19.

The U.K. Court's ultimate conclusion (U.K. Judgment) that the terms of the alleged Fidelity Guarantee (prior writing) does not constitute an explicit waiver of immunity by Defendants were guided by the particular legal framework and standards applicable with the FSIA waiver (explicit waiver detailed in documents agreement or otherwise) within (28 U.S.C. § 1605(a)(1). As this Court enunciated in *Matusick v. Erie Cty. Water Auth.*, 757 F.3d at 48, if the ultimate finding of fact

34

from prior findings bears on the issues raised on appeal, the prior findings have a preclusive effect regardless of whether the question was not actually litigated below.

Contrary to the district court's conclusion, the fact that the waiver clause within U.K. Immunity Act requires a prior written agreement does not make the U.K. Immunity Act deviate its standards from the FSIA waiver standards. While the examination of any executed document, being it an agreement or statute, from which a sovereign intent to waive immunity explicitly can be determined is the required standard for FSIA waiver, no part of the U.K. judgment insinuates that its ultimate conclusion that the terms of the fidelity guaranty (executed document) does not constitute a waiver of foreign immunity by Defendants is based on the findings that the Fidelity Guarantee is not a prior written agreement between Plaintiff and Defendants.

Meanwhile, the Second Circuit has held that waiver provisions are to be interpreted narrowly and it is rare for a court to find that a country's waiver of immunity extends to third parties not privy to the contract. Waiver will not be implied absent strong evidence of the sovereign's intent see. *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d at 1017;

In *Fairchild, Arabatzis & Smith, Inc. v. Prometco*, 470 F. Supp. 610, 616–617 (S.D.N.Y. 1979), Plaintiff (FAS) in bid to overcome the enforcement of an English Court's judgment in the New York Supreme court, filed an action at the district court for breach of contract and

35

fraud against the judgment creditor (Prometco). FAS claim for fraud contradicted the findings of the English court's judgment that had determined that the parties had a valid contract and free of fraud. In granting a summary judgment against FAS, the district court held that since the British judgment from the U.K. action determined that there existed a valid and binding contractual obligation free from fraud between the parties, the district court is right to conclude that the doctrine of collateral estoppel bars FAS from pleading a claim for common law fraud against the Prometco, *id.* at 617. The court held that FAS having litigated and lost this issue at the English court, FAS is barred from raising it once again in the American court i.d. 616; citing *Schuylkill Fuel Corp. v. Nieberg Realty Corp.*, 250 N.Y. 304, 306–07 (1929).

The court rejected FAS argument that the foreign judgment is not based on identical issues raised in the New York action because the British judgment was obtained through default and it withdrew from the British court proceeding before the British judgment was entered. The court held that the doctrine of collateral estoppel would nevertheless operate to bar FAS' fraud claim, because the New York courts have long given foreign default judgments collateral estoppel effect and considered them conclusive between the parties with regard

to all matters essential to sustain the judgment. citing . *119 Rosset Corp. v. Blimpie of New York Corp.*, 65 A.D.2d 683 (N.Y. App. Div. 1978) *fur. cit omt.*;

Likewise the U.K. court adjudicated the issue of whether based on the terms of the Fidelity Guaranty, whether the Defendants agreed to waive sovereign immunity, and determined that the Defendants did not agree to waive the sovereign immunity. The Plaintiff cannot circumvent the adverse rulings within the foreign judgment by pleading contradictory factual allegations previously adjudicated against him by the foreign court. See. *Scheiner v. Wallace*, 832 F. Supp. 687, 694 (S.D.N.Y. 1993) ("In finding English and New York courts apply similar notions of collateral estoppel, the Southern District previously held "[a] party is precluded from relitigating matters determined adversely to him in a prior action.") citing. *See. Fairchild, Arabatzis & Smith, Inc. v. Prometco*, 470 F. Supp. at 615–616. (foreign judgment when sued upon in New York normally precludes a retrial upon the merits….). Also see. *Asvesta v. Petroutsas*, 580 F.3d 1000, 1011 (9th Cir. 2009) (We recognize that *Hilton* cautions that "[t]he merits of [a foreign judgment] should not, in an action brought in this country upon the judgment, be tried afresh."" ) Collateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a "full and fair opportunity to

litigate . . . in [a] prior proceeding" and where "the decision of the issue was necessary to support a valid and final judgment on the merits" in the first action. See *Metromedia Co. v. Fugazy*, 983 F.2d at 365

## CONCLUSION

For the foregoing reasons, this Court is urged to reverse the district court's Opinion & Order (SPA 1–47) and dismiss Plaintiff's complaint with prejudice pursuant to the FSIA.

Respectfully submitted,

Dated: November 22, 2024    By: /s/ Gerald O. Egbase

Attorney for Defendants - Appellants
FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL OF THE FEDERAL GOVERNMENT OF NIGERIA

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **8,308 words**, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, **14-pt Century Schoolbook**, using TypeLaw.com's legal text editor.

Dated: November 22, 2024           By: /s/ Gerald O. Egbase

## Certificate of Service

I hereby certify that I electronically filed the foregoing

**APPELLANT'S BRIEF AND SPECIAL APPENDIX** with the Clerk

of the Court by using the Appellate CM/ECF system on November 22,

2024. I further certify that all participants in the case are registered

CM/ECF users and that service will be accomplished by the appellate

CM/ECF system.

<div style="margin-left:50%">

AOE Law & Associates

Respectfully submitted,

</div>

Dated: November 22, 2024     By: /s/ Gerald O. Egbase

<div style="margin-left:50%">

Gerald O. Egbase AOE Law & Associates 800 W. 1st Street, Suite 400 Los Angeles, California 90012 Tel:(213)620-7070 Email:ge-aoe@baselaw.net

Attorney for Defendants - Appellants FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL OF THE FEDERAL GOVERNMENT OF NIGERIA

</div>

# No. 24-2329

Special Appendix

## In the United States Court of Appeals

## for the Second Circuit

DR. LOUIS EMOVBIRA WILLIAMS,

*Plaintiff-Appellee,*

v.

FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL OF
THE FEDERAL GOVERNMENT OF NIGERIA,

*Defendant-Appellants.*

_____

On Appeal from the United States District Court
for the Southern District of New York
No. 1:23-cv-7356

## SPECIAL APPENDIX

Gerald O. Egbase
AOE Law & Associates
800 W. 1st Street, Suite 400
Los Angeles, California 90012
Email: ge-aoe@baselaw.net

*Attorney for Defendants - Appellants*
FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL OF
THE FEDERAL GOVERNMENT OF NIGERIA

41

# Table of Contents

**Page**

Tab No. 1 – Doc. 34 - OPINION AND ORDER Re. Defendants' Motion to Dismiss [2024-08-12] .......................................................SPA1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

DR. LOUIS EMOVBIRA WILLIAMS,

               Plaintiff,

        -v-

FEDERAL GOVERNMENT OF NIGERIA;
ATTORNEY GENERAL OF THE FEDERAL
GOVERNMENT OF NIGERIA; CENTRAL
BANK OF NIGERIA; JPMORGAN CHASE &
CO.; and JOHN DOES 1–10,

               Defendants.

------------------------------------------------------------------- X

23-cv-7356

<u>OPINION AND ORDER</u>

| USDC SDNY |
| :--- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED: 08/12/2024 |

LEWIS J. LIMAN, United States District Judge:

    This case concerns recognition and enforcement of a foreign judgment. Plaintiff Dr. Louis Emovbira Williams ("Plaintiff") brings suit against four named defendants: the Federal Government of Nigeria ("FGN"), the Attorney General of the Federal Government of Nigeria named in his official capacity ("AG-FGN"), the Central Bank of Nigeria (the "Central Bank"), and JPMorgan Chase & Co. ("JPMorgan"), and other presently unidentified Nigerian government entities and U.S. banking entities that hold Nigerian Government funds. Dkt. No. 3-1 ("Compl.").

    FGN and AG-FGN (collectively, the "Nigerian Defendants") move, pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), (5), and (6), to dismiss the complaint. Dkt. No. 21. For the following reasons, Defendants' motion is denied.

## BACKGROUND

    The Court accepts the well-pled allegations of the complaint and the documents incorporated therein as true.

**SPA 1**

Plaintiff is a Nigerian citizen residing in London, UK.  Compl. ¶¶ 10, 30.  In 1986, a London solicitor named Reuben Gale tricked Plaintiff into entering a fraudulent transaction.  *Id.* ¶¶ 32–33.  Plaintiff transferred $6,520,190 in trust as funds required to consummate the transaction.  *Id.* ¶ 32. Unbeknownst to Plaintiff, Gale was acting on behalf of the State Security Services of Nigeria and the $6,520,190 was transferred to the Central Bank.  *Id.* ¶ 32; Compl. Ex. A. ¶¶ 20–21.  In May 1986, the Central Bank froze and then seized ₦30 million of Plaintiff's money.  Compl. ¶ 34.  Plaintiff was additionally arrested in Nigeria and sentenced to a ten-year prison term for "economic sabotage."  *Id.* ¶ 34, Compl. Ex. A at ECF p. 29.  Plaintiff left prison and returned to London in 1989.  Compl. ¶ 35.  FGN pardoned Plaintiff on August 23, 1993.  *Id.* ¶¶ 36–39.  On September 29, 1993, FGN issued a "Fidelity Guarantee and Abiding Memorandum of Understanding of Assurance" directing that $6,520,190.00 and ₦5,013,316.29 plus compound interest be returned to Plaintiff.  *Id.* ¶¶ 40–41, 43; Compl. Ex. B ("Fidelity Guarantee" or "Fidelity Guar.").[1]

### A.    Relevant Provisions Of The Fidelity Guarantee

The Fidelity Guarantee is addressed from the Office of the Presidency to "Governor Abdulkadir Ahmed, CBN & Perm[anent] Sec. Federal Min[istry] of Financy."  *Id.* at 43.[2]  It is further carbon copied to "Supreme Headquarters," "Office of the Attorney General of the Federation," and "Permanent Secretary Federal Ministry of Finance."  *Id.* at 44, 50.  It bears a stamp reading "ATTORNEY-GENERAL OF THE FEDERATION" on the cover page and final page.  *Id.* at 43, 50.  The heading states that the Fidelity Guarantee was issued to "protect the assets

---

[1] The page numbers cited with respect to the Fidelity Guarantee reference the ECF header page numbers.

[2] The Court understands the term "CBN" to refer to the Central Bank.  The Court additionally understands the terms "State of Nigeria," "Federation of Nigeria," "Federal Military Government," "FMG," "State of Nigeria," and "Nigerian State," used throughout the Fidelity Guarantee, to refer to FGN.

**SPA  2**

of Dr L.E. Williams now domiciled in the UK" and that the "Fidelity Guarantee and Abiding Warranty are made as an Order for Execution by the Central Bank of Nigeria." *Id.* at 45, ¶ 2 (capitalization altered). A London address is listed as Plaintiff's present address in the U.K. *Id.* ¶ 16.

Paragraph 14 lays out the sums to be returned to Plaintiff including "(a) US$6,520,190 with interest fixed 17½ % compound interest on roll over basis from 1986[] [and] (b) N5,013,316M []with compound interest fixed at 25% on rollover basis." *Id.* ¶ 14.

Paragraph 21 purports to generally waive sovereign immunity on behalf of FGN and the Central Bank in "the unlikely event, if and when Dr Williams is constrained to take legal proceedings to secure and enforce the release of his monies in [paragraph] (14) above." *Id.* ¶ 21. It states:

> Neither the Nigerian State nor the CBN shall raise or invoke any defences so as to deprive Dr Williams of his monies in [paragraph] (14) above or make it financially onerous and burdensome such as requiring Dr Williams to . . . suffer from CBN's objections or pleadings such as effluxion of time,[3] acts of state, state privileges, state secrecy and state immunities and the like. All these defences and the like shall be deemed to have been waived without any equivocation and doubt whatsoever.

*Id.* ¶ 21(iii). Paragraph 21 additionally states that in the event of such a proceeding, "[i]t would be a matter for Dr Williams to make a choice of his forum for that purpose be it the UK or Nigeria or any other country" and "English Law is to apply." *Id.* ¶ 21(i)–(ii).

Two additional paragraphs discuss potential subsequent proceedings brought to enforce a judgment. [4] Paragraph 18 states that "[i]n any proceedings in any jurisdiction to enforce any

---

[3] The term "effluxion of time" refers to the expiration of an agreement due to the passage of time as opposed to a specific triggering event or act. *See* Black's Law Dictionary 629 (10th ed. 2014). It is not relevant to the present motion to dismiss.

[4] Except in direct quotations, the Court uses the preferred American spelling of "judgment," "defense," and other words for which preferred American and English or Nigerian spellings may differ.

**SPA 3**

judgement obtained in relation to [paragraph] (14) both the CBN and the Nigerian State shall refrain from raising any objection on the grounds that Dr Williams is precluded from levying execution on funds of CBN merely because the funds are funds of Nigerian State and/or Central Bank." *Id.* ¶ 18. Paragraph 20 states that "for the avoidance of doubt, both the Nigerian State and CBN must be deemed to have waived any immunity from levying of execution on amount kept in the name of CBN or State of Nigeria or any institution of Nigeria (save diplomatic) to the extent to which any amount in [paragraph] (14) above remains unpaid." *Id.* ¶ 20.

**B.    The UK Action**

The Central Bank and FGN failed to honor the Fidelity Guarantee and failed to make any payment to Plaintiff. Compl. ¶¶ 45–49.

As a result, in 2016, Plaintiff filed an action before the High Court of Justice, Queen's Bench Division, Commercial Court, against FGN and AG-FGN seeking to establish the direct liability of those defendants for breach of trust, or in the alternative, to enforce the Fidelity Guarantee. *Id.* ¶ 52; Compl. Ex. G ("First U.K. Judgment") ¶ 13. The Nigerian Defendants failed to appear, and Plaintiff moved for a default judgment. *Id.* ¶ 54; First U.K. Judgment ¶¶ 1, 11.

On November 9, 2018, the High Court held a hearing and approved the judgment. *See* First U.K. Judgment. The First U.K. Judgment found that under English law the Nigerian Defendants had not waived sovereign immunity pursuant to the Fidelity Guarantee. *Id.* ¶¶ 14–19; Compl. Ex. H ("First U.K. Order" at 1). Proceeding only under paragraph 21 of the Fidelity Guarantee, the court noted that paragraph 21 did not evidence a "prior written agreement" to waive sovereign immunity as required by Section 2 of the State Immunity Act 1978 (U.K.) ("U.K. Immunity Act"). First U.K. Judgment ¶¶ 14–19. The Judgment noted that while the Fidelity Guarantee could be interpreted as "an agreement between the defendant and [Plaintiff]" for the

purposes of the U.K. Immunity Act, *id.* ¶ 16, it appeared to be "an agreement of the Central Bank" and not "a prior agreement between the State and [Plaintiff]," *id.* ¶ 18.

Nevertheless, the First U.K. Judgment found that Plaintiff's alternative claim predicated upon the underlying fraud satisfied Section 3 of the U.K. Immunity Act and thus that the action could proceed against the Nigerian Defendants. *Id.* ¶¶ 14, 20.[5]

The First U.K. Judgment additionally found that the Nigerian Defendants had been duly served in accordance with the U.K. Immunity Act. *Id.* ¶¶ 21–22. The High Court found that Plaintiff had alleged a special agreement for service based on two averments in Plaintiff's affidavits. *Id.* ¶ 21. First, Plaintiff's "lawyer in Nigeria had a conversation with the Solicitor General in Nigeria in February 2016, and according to the evidence of [Plaintiff] in that conversation the Solicitor General agreed to service of the proceedings by service on the High Commission in London." *Id.* Second, Plaintiff had a telephone conversation "with the High Commissioner and the Ambassador at the Nigerian High Commission, and the evidence of [Plaintiff] is that he was told that the High Commission was instructed to accept service, and the application was served accordingly." *Id.*

Ultimately, as reflected in the First U.K. Order, the High Court ordered that the Nigerian "Defendants shall pay [Plaintiff] the sum of USD 6,520,190 (or the Sterling equivalent at the time of payment), together with interest pursuant to section 35A of the Senior Courts Act 1981 at a rate of 4%, from 1 June 1986 to 9 November 2018, amounting to USD 8,466,600.69 (or the Sterling

---

[5] Section 3(1) of the U.K. Immunity Act states in relevant part that a foreign state "is not immune as respects proceedings relating to . . . (a) a commercial transaction entered into by the State; or (b) an obligation of the State which by virtue of a contract (whether a commercial transaction or not) falls to be performed wholly or partly in the United Kingdom."

equivalent at the time of payment)." First U.K. Order at 2. The Nigerian Defendants were additionally ordered to pay Plaintiff's costs in the amount of £13,950. *Id.*

On September 28, 2020, the Nigerian Defendants applied to have the First U.K. Order set aside, arguing that the claim form and Particulars of Claim were not served in compliance with the U.K. Immunity Act, that the claim form was not served outside the jurisdiction within six months following its issuance, and that FGN was immune from the jurisdiction of the English courts under the U.K. Immunity Act. Dkt. No. 32-1 ("Second U.K. Judgment") ¶¶ 33, 38. On December 19, 2023, the High Court of Justice, King's Bench Division, Commercial Court dismissed the Nigerian Defendants' application to set aside the First U.K. Order on all grounds. *Id.* ¶¶ 61, 63–64, 66–68, 72; Dkt. No. 32-2 ("Second U.K. Order").

The Second U.K. Judgment found that service had been proper, relying primarily on the same affidavits as those cited in the First U.K. Judgment in addition to Plaintiff's witness statements. Second U.K. Judgment ¶¶ 42–52, 56–61. Additionally, the Second U.K. Judgment agreed with the prior determination that the Fidelity Guarantee did not waive sovereign immunity pursuant to Section 2 of the U.K. Immunity Act, but that Section 3 acted to abrogate the Nigerian Defendants' immunity. *Id.* ¶¶ 65–68. As stated in the Second U.K. Order, the High Court ordered the Nigerian Defendants to pay Plaintiff's costs in the amount of £32,000. Second U.K. Order ¶ 3. The High Court additionally denied the Nigerian Defendants' application for permission to appeal. *Id.* ¶ 4.

## PROCEDURAL HISTORY

When the Nigerian Defendants continued to fail to pay the Judgment, Plaintiff filed a complaint in the Supreme Court of the State of New York, County of New York on June 26, 2023. *See generally* Compl. On August 18, 2023, the Central Bank filed a notice of removal and an amended notice of removal pursuant to 28 U.S.C. §§ 1441(d), and 1446 (a), (b) and (d).

6

Dkt. Nos. 1, 3.  On August 21, 2023, the remaining defendants moved to join the Central Bank's amended notice of removal.  Dkt. No. 10.  The Court granted the motion for joinder on September 15, 2023.

The Central Bank filed an answer to the complaint on September 19, 2023.  Dkt. No. 18. JPMorgan filed an answer to the complaint on September 20, 2023.  Dkt. No. 19.

FGN and AG-FGN moved to dismiss the complaint on September 19, 2023.  Dkt. No. 17. The Nigerian Defendants filed an amended motion to dismiss along with a supporting memorandum of law and two supporting declarations on October 6, 2023.  Dkt. Nos. 21–24. Plaintiff filed a memorandum of law in opposition to the motion to dismiss on November 21, 2023. Dkt. No. 30.  The Nigerian Defendants filed a reply memorandum of law on December 8, 2023. On January 14, 2024, Plaintiff filed a letter attaching the Second U.K. Judgment and Second U.K. Order as supplemental authorities.  Dkt. Nos. 32, 32-1, 32-2.  The Nigerian Defendants filed a letter in response to Plaintiff's letter of supplemental authority on January 17, 2024.  Dkt. No. 33.

**LEGAL STANDARDS**

### A.    Rule 12(b)(1)

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'"  *U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc.*, 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).

SPA  7

Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party. *Robinson v. Gov't of Malay.*, 269 F.3d 133, 140 (2d Cir. 2001). However, where the jurisdictional challenge is fact-based, the defendant may "proffer[] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). In the case of a fact-based jurisdictional challenge, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations, and the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Zim Am. Integrated Shipping Servs. Co., LLC v. Sportswear Grp., LLC*, 550 F. Supp. 3d 57, 62 (S.D.N.Y. 2021) (citation omitted).

### B.    Rule 12(b)(5)

"When a defendant moves to dismiss a complaint under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Esposito v. TipRanks, Ltd.*, 2024 WL 68528, at *2 (S.D.N.Y. Jan. 4, 2024) (quoting *Militinska-Lake v. Kirnon*, 2023 WL 7648511, at *1 (2d Cir. Nov. 15, 2023) (summary order)); *see* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (4th ed. 2016) ("[T]he party on whose behalf service of process is made has the burden of establishing its validity.").

"In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016) (citing *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 386 (S.D.N.Y. 2002)).

C.     **Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663.  A complaint therefore must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  In sum, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Generally, when adjudicating a 12(b)(6) motion, a court will "not look beyond 'facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.'"  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)); *see Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022); *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 383 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).

### D.    Plaintiff's Supplemental Authority

The Court may consider the Second U.K. Judgment and Second U.K. Order on the motion to dismiss.  On a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(5), courts may look to matters outside the complaint to assess jurisdiction.  *See Carter*, 822 F.3d at 57; *Cassano*, 186 F. Supp. 3d at 320.  On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider judicially noticeable materials.  *See Goel*, 820 F.3d at 559.  The Second U.K. Judgment and Second U.K. Order are judicially noticeable "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Sheindlin v. Brady*, 597 F. Supp. 3d 607, 617 (S.D.N.Y. 2022); *Corley v. Collins*, 2023 WL 6390631, at *1 n.1 (S.D.N.Y. Oct. 2, 2023).  Defendants do not challenge the authenticity of Plaintiff's supplemental authorities or claim to have been prejudiced thereby.  *See* Dkt. No. 33 (arguing that "Plaintiff's supplemental authorities do not alter the substance of the Defendants' motion to dismiss, instead, the supplemental authorities further validate the arguments supporting the [Nigerian] Defendants' motion to dismiss"); *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 500 (S.D.N.Y. 2017) (taking judicial notice of a foreign arbitration award where parties did not challenge authenticity of the award, attached portions of the award to their briefs, and relied heavily on the arbitration tribunal's findings as stated in the award to make their jurisdictional arguments); *Thompson v. Mun. Credit Union*, 2022 WL 2717303, at *7 n.7 (S.D.N.Y. July 13, 2022) (denying motion to strike supplemental authority on the grounds that the supplemental authority provided further support for previously articulated arguments "without adding new arguments or prejudicing defendants").  Accordingly, judicial notice is appropriate and the Court will consider the Second U.K. Judgment and Second U.K. Order to establish the fact of the prior litigation but not for the truth of their contents and conclusions.

SPA  10

### E.     Choice Of Law

While the Fidelity Guarantee states that English law is to apply in any legal proceeding to secure and enforce the release of Plaintiff's funds, Fidelity Guar. ¶ 21, neither party argues that English law should apply to this action to domesticate a foreign judgment, *see generally* Dkt. Nos. 21–25, 30–33.  Indeed "the recognition of foreign judgments is governed by state law." *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 582 (2d Cir. 1993); *see also* Restatement (Third) of Foreign Relations Law § 481(b) (1987) ("A judgment entitled to recognition . . . may be enforced by any party or its successors or assigns against any other party, its successors or assigns, in accordance with the procedure for enforcement of judgments applicable where enforcement is sought."); *Servipronto De El Salvador, S.A. v. McDonald's Corp.*, 837 F. App'x 817, 819 (2d Cir. 2020) (summary order) ("New York law governs actions brought in the State of New York to enforce judgments from foreign countries.").  Accordingly, the Court applies New York law except where noted.

### DISCUSSION

Defendants argue that this Court lacks jurisdiction because:  (1) Defendants are immune under the Foreign Sovereign Immunities Act ("FSIA"); (2) there is no diversity jurisdiction; and (3) Plaintiff failed to comply with the FSIA's service requirements.  AG-FGN additionally argues that the claims against it should be dismissed because:  (1) there is no personal jurisdiction over AG-FGN and (2) common law foreign official immunity bars this action as against AG-FGN. Defendants additionally argue that the United Kingdom is the appropriate and more convenient forum, and that Plaintiff fails to state a claim to relief because the U.K. Judgments and Orders are not presently final and enforceable.

11

## I.     The Court Has Jurisdiction

### A.     The Nigerian Defendants Are Not Immune To Jurisdiction Under The Foreign Sovereign Immunities Act

Actions against foreign sovereigns for recognition of a foreign judgment are subject to the FSIA, which serves as "the sole source for subject matter jurisdiction over any action against a foreign state." *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007); *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989) ("the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country"). [6] "As a baseline rule, the FSIA holds foreign states and their instrumentalities immune from the jurisdiction of federal and state courts." *Opati v. Republic of Sudan*, 590 U.S. 418, 421 (2020) (citing 28 U.S.C. §§ 1603(a), 1604). To overcome that baseline rule, the FSIA enumerates certain exceptions including: (1) waiver; (2) certain commercial acts connected to the United States; (3) expropriations in violation of international law; (4) rights in certain kinds of property located in the United States; (5) certain non-commercial torts; and (6) enforcement of arbitral agreements and awards. 28 U.S.C. § 1605(a). Plaintiff argues that the exceptions for commercial acts, expropriation, and waiver apply to abrogate the Nigerian Defendants' sovereign immunity here.

#### 1.     Plaintiff Fails To Show That The Commercial Activity Exception Applies

The FSIA's commercial activity exception "abrogates sovereign immunity in cases in which the action is based upon[:]

> (1) a commercial activity carried on in the United States by the foreign state; or upon

---

[6] The Nigerian Defendants' argument that, in the event that the Court determines that FGN is immune pursuant to the FSIA, "Plaintiff cannot save this action by mistakenly asserting that there is diversity jurisdiction" is legally correct, but it also is irrelevant in light of the Court's determination that Plaintiff plausibly alleges the Nigerian Defendants are not immune and jurisdiction therefore lies under the FSIA. Dkt. No. 22 at 20.

12

SPA 12

>    (2) an act performed in the United States in connection with a commercial activity
>         of the foreign state elsewhere; or upon
>
>    (3) an act outside the territory of the United States in connection with a commercial
>         activity of the foreign state elsewhere and that act causes a direct effect in the
>         United States.

*Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010) (quoting 28 U.S.C. § 1605(a)(2)).

In the context of the FSIA, a "commercial activity" is "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The FSIA specifies that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* Thus, a foreign government's acts are commercial when it acts "not as a regulator of a market, but in the manner of a private player within that market." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992); *accord Saudi Arabia v. Nelson*, 507 U.S. 349, 360 (1993) (citing Restatement (Third) of the Foreign Relations Law of the United States § 451 ("Under international law, a state or state instrumentality is immune from the jurisdiction of the courts of another state, except with respect to claims arising out of activities of the kind that may be carried on by private persons.")).

There is some uncertainty in the case law regarding whether, in an action seeking recognition and enforcement of a foreign money judgment, the claim must be "based upon" the judgment itself or the conduct giving rise to the judgment. *See Hussein v. Maait*, 607 F. Supp.3d 374, 379-80 (S.D.N.Y. 2022) (recognizing uncertainty but stating that the claim must be based upon the judgment). In *International Housing Ltd. v. Rafidain Bank Iraq*, the Second Circuit analyzed the commercial acts exception by looking to the alleged conduct underlying the foreign judgment. 893 F.2d 8, 9 (2d Cir. 1989). Subsequently, in *Nelson*, the Supreme Court held that the

statutory language "based upon" in the FSIA is most naturally understood "to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." 507 U.S. at 357. In *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.* 204 F.3d 384 (2d Cir. 2000), the Second Circuit acknowledged that "*International Housing* was decided prior to *Nelson* and is in some tension with a literal reading of the definition of 'based upon' used by the Supreme Court in *Nelson*" but recognized that a rule that required a court to look only to the foreign judgment and not to the conduct underlying that judgment "would, in practice, preclude plaintiff from enforcing judgments." *Id.* at 389 & n.4. The court refrained from deciding whether *Nelson* should be read to abrogate the law of the Circuit, noting that the resolution of that issue "would have a significant impact on U.S. foreign relations." *Id.* at 389. In *Servaas Inc. v. Republic of Iraq*, the Second Circuit stated that "[i]n applying the commercial activity exception to an action for recognition of a foreign judgment, we look to the underlying conduct that gave rise to the judgment," 653 F. App'x 22, 23–24 (2d Cir. 2011) (summary order), but *Servaas* is an unpublished order and under the Circuit's rules, it is not precedential authority. *See United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010).

A district court is required to "follow a precedential opinion of the Second Circuit 'unless and until it is overruled . . . by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit.'" *Grytsyk v. Morales*, 527 F.Supp.3d 639, 653 (S.D.N.Y. 2021) (quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015), *aff'd*, 854 F.3d 197 (2d Cir. 2017)); *see 689 Eatery Corp. v. City of New York*, 2024 WL 519967, at *32 (S.D.N.Y. Feb. 9, 2024); *Loughlin v. Goord*, 558 F. Supp. 3d 126, 142 (S.D.N.Y. 2021), *aff'd*, 2022 WL 9575656 (2d Cir. Oct. 17, 2022). The Second Circuit's decision in *Transatlantic Shiffahrtskontor* is inconsistent with the notion that

14

SPA  14

*International Housing Ltd.* "will almost inevitably be overruled by the Second Circuit." *Grytsyk*, 527 F.Supp.3d at 653. Confronted with the question whether to overrule *International Housing Ltd.*, the court refrained from doing so. *See Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) (a summary order "has to be deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion."). In any event, regardless whether Plaintiff's lawsuit is deemed to be based upon the foreign judgment or the conduct underlying that judgment, the commercial activity exception to the FSIA does not apply.

The conduct underlying the foreign judgment is properly understood to be the Nigerian Defendants' alleged fraudulent inducement of Plaintiff to part with his funds and transmit them to Nigeria followed by the seizure of those funds in Nigeria and Plaintiff's subsequent imprisonment in Nigeria. None of that conduct is properly understood to be an act outside the territory of the United States taken in connection with commercial activity that caused a direct effect in the United States. The seizure itself self-evidently is insufficient to invoke the commercial activity exception as it does not constitute FGN's "participation in the marketplace in the manner of a private citizen or corporation." *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 176 (2d Cir. 2010) (quoting *Weltover*, 504 U.S. at 614); *see Garb v. Republic of Poland*, 440 F.3d 579, 586 (2d Cir. 2006) ("Expropriation is a decidedly sovereign—rather than commercial—activity.").

The underlying fraud—wherein Gale allegedly acted "as an agent of the Nigerian Government" to trick Plaintiff into sending his funds to Nigeria ostensibly to consummate a transaction there—more closely resembles a commercial transaction. Compl. ¶ 32. *See Weltover*, 504 U.S. at 614 ("the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" but rather "whether the

15

particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in 'trade and traffic or commerce'" (quoting Black's Law Dictionary 270 (6th ed. 1990)).

However, even assuming that the underlying transaction constitutes a commercial activity, Plaintiff has not demonstrated that any of the three prongs of the commercial activity exception apply. Plaintiff does not show that the activity was "carried on in the United States by the foreign state" 28 U.S.C. § 1605(a)(1), or that there was "an act performed in the United States in connection with a commercial activity of a foreign state elsewhere," *id.* § 1605(a)(2).[7] Plaintiff also has not shown a direct effect in the United States to satisfy the third prong. The underlying fraud does not bear any connection to the United States, let alone give rise to a direct effect here. *See Weltover*, 504 U.S. at 618 (An effect is "direct" for the purposes of the commercial activity exception "if it follows as an immediate consequence of the defendant's activity.").

If, instead, the act of the foreign state serving as the basis of the claim is understood to be the judgment itself, Plaintiff still has failed to satisfy the FSIA's commercial activity exception. Again, Plaintiff has not demonstrated that any of the three prongs of the commercial activity exception apply. Plaintiff does not show that the judgment was an act undertaken in the United States by the foreign state or that any connected act transpired in the United States. Nor does Plaintiff show any direct effect in the United States. Plaintiff does not show, for example, that the U.K. Judgment called for payment in the United States such that nonpayment could be construed

---

[7] While Plaintiff alleges that the Nigerian Defendants currently maintain bank accounts in New York. Compl. ¶¶ 11, 22, 66, where the only connection to the United States is "the mere payment of money from a bank account located in the United States," that conduct does not constitute a "legally significant act" for the purposes of the second prong of the commercial activity exception. *Guirlando v. T.C. Ziraat Bankasi, A.S.*, 2009 WL 159705, at *1–3 (S.D.N.Y. Jan. 7, 2009) (Sullivan, J.) (citing *Antares v. Federal Republic of Nigeria*, 999 F.2d 33 (2d Cir. 1993)).

as a direct effect felt here. *See Hussein*, 607 F. Supp. 3d at 380; *Peterson v. Royal Kingdom of Saudi Arabia*, 416 F.3d. 83, 90 (D.C. Cir. 2005); *Goodman Holdings v. Rafidain Bank*, 26 F.3d. 1146–47 (D.D.C. 1994).[8]

Plaintiff therefore fails to show that the commercial activity exception applies.

### 2.     Plaintiff Fails To Show That The Expropriation Exception Applies

The expropriation exception provides that a foreign sovereign is not immune from suit and applies:

> in any case in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

28 U.S.C. § 1605(a)(3). "Thus, in order to establish jurisdiction pursuant to the FSIA expropriation exception, a plaintiff must show that: (1) rights in property are in issue; (2) that the property was 'taken'; (3) that the taking was in violation of international law; and (4) that one of the two nexus requirements is satisfied." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 251 (2d Cir. 2000).

Plaintiff argues that "if the Court were to look into the underlying history of this case to define the 'lawsuit for which jurisdiction is sought' being the underlying extortion and

---

[8] The Second Circuit has indicated that even if Plaintiff made such a claim, it would not independently suffice to abrogate Defendants' immunity under the FSIA. *See Transatlantic Shiffahrtskontor*, 204 F.3d at 390–91 ("[E]ven assuming that foreign judgments . . . can ever satisfy the 'based upon' requirement, if the acts upon which the assigned judgments are themselves grounded do not meet the 'based upon' requirement of § 1605(a)(2) of the FSIA—i.e., where they are not acts taken in connection with a commercial activity that caused a direct effect in the United States—an action to enforce the foreign judgments in U.S. courts must fail for lack of subject matter jurisdiction.").

commitment (but failure) to repay Plaintiff in full—that involves the expropriation of funds into U.S. dollar accounts held in New York."  Dkt. No. 30 at 13.

The Supreme Court has held that "the phrase 'rights in property taken in violation of international law,' as used in the FSIA's expropriation exception, refers to violations of the international law of expropriation and thereby incorporates the domestic takings rule."  *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 187 (2021).  "This 'domestic takings rule' assumes that what a country does to property belonging to its own citizens within its own borders is not the subject of international law."  *Id.* at 176 (citing *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 181 (2017)).  In other words, "[a] 'taking of property' could be 'wrongful under international law' only where a state deprived 'an alien' of property." *Id.* at 180.  Here, because Plaintiff alleges that he was a Nigerian citizen and that the Nigerian government seized his funds, the domestic takings rule applies and the underlying fraud was therefore not a taking in violation of international law as required to give rise to the expropriation exception.

3.     **Plaintiff Shows That The Nigerian Defendants Waived Sovereign Immunity**

The FSIA's waiver exception states that a foreign state is not immune in any case "in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver."  28 U.S.C. § 1605(a)(1). [9]

---

[9] The FSIA also provides that a foreign state's property located in the United States "used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States . . . if [] the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver."  28 U.S.C. § 1610.

18

SPA 18

Under the FSIA, a waiver may be explicit even if it does not single out the United States or contain an explicit agreement that the foreign sovereign will be subject to the jurisdiction of the United States courts.  The waiver need not refer to the United States as long as the waiver is clear and unambiguous.  *See Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 293–94 (2d Cir. 2009) (citing *Libra Bank Ltd. v. Canco Nacional de Costa Rica, S.A.*, 676 F.2d 47, 49 (2d Cir. 1982)).

The Fidelity Guarantee contains a clear and unambiguous waiver of sovereign immunity with respect to any proceedings in "any" jurisdiction to enforce "any" judgment in relation to the Nigerian Defendants' obligations to return Plaintiff's funds.  The relevant provisions of the Fidelity Guarantee state as follows:

> In any proceedings in any jurisdiction to enforce any judgement obtained in relation to [paragraph] (14)[10] both the CBN and the Nigerian State shall refrain from raising any objection on the grounds that Dr Williams is precluded from levying execution on funds of CBN merely because the funds are funds of Nigerian State and/or Central Bank.
> . . .
> Therefore for the avoidance of doubt, both the Nigerian State and CBN must be deemed to have waived any immunity from levying of execution on amount kept in the name of CBN or State of Nigeria or any institution of Nigeria (save diplomatic) to the extent to which any amount in [paragraph] (14) above remains unpaid.
> . . .
> Neither the Nigerian State nor the CBN shall raise or invoke any defences so as to deprive Dr Williams of his monies in [paragraph] (14) above or make it financially onerous and burdensome such as requiring Dr Williams to . . . suffer from CBN's objections or pleadings such as effluxion of time, acts of state, state privileges, state secrecy and state immunities and the like.  All these defences and the like shall be deemed to have been waived without any equivocation and doubt whatsoever.

Dkt. No. 30 at 7–8 (quoting Fidelity Guar. ¶¶ 19–21).

---

[10] Paragraph 14 of the Fidelity Guarantee details the sums to be returned to Plaintiff including "$6,520,190," "N5,013,316M," and specified interest.  Fidelity Guar. ¶ 14.

That language is clear, broad, and unambiguous.   The term "any" is properly understood to mean "every;" "its meaning is expansive rather than restrictive." *Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 517 (2d Cir. 2023) (citation omitted); *see Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004) (a contract's use of the word "any" should be accorded "an expansive meaning, that is, 'one or some indiscriminately of whatever kind'" (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *State v. Philip Morris Inc.*, 869 N.E.2d 636, 636 (N.Y. 2007) ("By using the expansive words 'any' and 'relating to,' the [agreement] makes explicit that all claims that have a connection with the Independent Auditor's calculations and determinations are arbitrable."). Moreover, the phrase "in relation to" is also meant to be read broadly.  *See id.*; *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) ("The word 'relation,' . . . as 'used esp[ecially] in the phrase "in relation to," is defined as a "connection" to or a "reference" to.'" (quoting Webster's Third New International Dictionary 1916 (1986)).   "Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with,' and synonymous with the phrases 'with respect to,' and 'with reference to,' and have held such phrases to be broader in scope than the term 'arising out of.'"  *Id.*

Accordingly, the Fidelity Guarantee reflects a waiver of sovereign immunity for any proceeding in any court to recognize and enforce a judgment pertaining to Plaintiff's seized funds. *See Cap. Ventures Int'l*, 552 F.3d at 294 ("There can be explicit waivers without a reference to the United States, as the waiver of immunity in 'any court' in this case illustrates."); *see also Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 234 (5th Cir. 2004) (finding an explicit waiver under the FSIA where a contract read "[t]he Congo hereby irrevocably renounces to claim any immunity during any procedure relating to any arbitration decision handed down by an Arbitration Court"); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162

& n. 13 (D.C. Cir. 2002) (finding an explicit waiver under the FSIA where the waiver said "[i]n respect of any arbitration or legal action or proceedings arising out of or in connection with this Agreement, . . . [the Kazakhstan State Committee] hereby irrevocably agrees not to claim and hereby irrevocably waives . . . immunity for itself and the assets of the Republic of Kazakhstan to the full extent permitted by the laws of such jurisdiction").

Defendants argue that the complaint's reference to jurisdiction in the United Kingdom undermines any inference that FGN waived sovereign immunity in United States courts. Dkt. No. 22 at 10 (citing Compl. ¶ 18). That argument is ill-founded. At paragraph 21, the Fidelity Guarantee states: "[i]n the unlikely event, if and when Dr Williams is constrained to take legal proceedings to secure and enforce the release of his monies . . . the FMG orders and CBN herein agrees that . . . "[i]t would be a matter for Dr Williams to make a choice of his forum for that purpose be it the UK or Nigeria or any other country" and "English Law is to apply." Fidelity Guar. ¶ 21. The Second Circuit has held that "the mention of specific, non-United States jurisdictions" does not preclude a finding that the foreign state "waived its sovereign immunity to suit in the United States" because "a waiver of sovereign immunity can be explicit even when other provisions of the document are applicable only to specific, non-United States jurisdictions." *Cap. Ventures*, 552 F.3d at 295. Here, the Fidelity Guarantee does not merely mention that suit may be brought in a non-United States jurisdiction; it expressly states that Plaintiff may alternatively bring suit in "any other country," thus contemplating that suit could be brought in the United States. Fidelity Guar. ¶ 21; *cf. Cap. Ventures*, 552 F.3d at 295–96 (foreign states may avoid waiver where mention of a non-U.S. jurisdiction or choice of law makes it clear "that there is no intent to waive sovereign immunity in United States courts"). Moreover, it is black letter law that parties can agree to the application of the law of a foreign country without committing themselves

21

to litigate exclusively in that foreign country. *See Everything Yogurt Brands, LLC v. Bianco*, 2024

WL 3497757, at *1 (S.D.N.Y. July 22, 2024) ("[C]ontrary to the complaint's allegations that the

contracts underlying this action have forum selection clauses designating New York, New York

as the appropriate forum, the contracts have only a *choice-of-law* provision designating New York

law as the law governing the interpretation of the contracts . . .").

Defendants next argue that because the First U.K. Judgment held that Defendants had not

waived sovereign immunity pursuant to the Fidelity Guarantee, Plaintiff is precluded from arguing

here that the Fidelity Guarantee contains a waiver of sovereign immunity. Dkt. No. 22 at 11–15

(citing *Scheiner v. Wallace*, 832 F. Supp. 687, 694 (S.D.N.Y. 1993) (holding that a party is

"precluded from relitigating matters determined adversely to him in a prior action"), *Fairchild,*

*Arabatzis & Smith, Inc. v. Prometco*, 470 F.Supp. 610, 615–16 (S.D.N.Y 1979) (holding that a

foreign judgment "precludes a retrial upon the merits" in New York), *and Asvesta v. Petroutsas*,

580 F.3d 1000, 1011 (9th Cir. 2009) (holding that a foreign judgment should not "be tried afresh")).

That argument misunderstands both the principles of federal U.S. issue preclusion and the First

U.K. Judgment.[11]

---

[11] The law of the forum applies to determine the preclusive effect of a foreign judgment. *See*
*Alfadda v. Fenn*, 966 F. Supp. 1317, 1326–30 (S.D.N.Y. 1997) ("[A] federal court should normally
apply either federal or state law, depending on the nature of the claim, to determine the preclusive
effect of a foreign country judgment." (citing *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 293
F.Supp. 892, 908 (S.D.N.Y.1968) (Mansfield, J.), *aff'd*, 433 F.2d 686 (2d Cir.1970), *cert. denied*,
403 U.S. 905 (1971)), *aff'd*, 159 F.3d 41 (2d Cir. 1998)). Whereas "courts sitting in diversity
deciding state law claims generally look at state choice-of-law rules to determine the preclusive
effect of foreign judgments," federal courts generally apply the federal preclusion rule in cases
involving "federal claims or a significant federal interest." *Fairfield Sentry Ltd. (In Liquidation)*
*by & through Krys v. Citibank, N.A. London*, 630 F. Supp. 3d 463, 495 (S.D.N.Y. 2022); *see also*
*Simmtech Co. v. Citibank, N.A.*, 2016 WL 4184296, at *6–11 (S.D.N.Y. Aug. 3, 2016) (applying
federal claim preclusion and collateral estoppel analyses to determine the preclusive effect of
foreign decision against federally-chartered corporation), *aff'd*, 697 F. App'x 35 (2d Cir. 2017);
*CSFB HOLT LLC v. Collins Stewart Ltd.*, 2004 WL 1794499, at *2–7 (S.D.N.Y. Aug. 10, 2004)
(applying federal claim preclusion and collateral estoppel analyses to determine the preclusive

Issue preclusion, or collateral estoppel, applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011); *see also* Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").[12]

The First U.K. Judgment did not decide an issue identical to the one raised by the parties here. The First U.K. Judgment decided an issue under English law, namely, whether the waiver in the Fidelity Guarantee satisfied U.K. standards with respect to the waiver of sovereign immunity. The ruling to which the Nigerian Defendants point is the statement of the Honorable Mrs. Justice Moulder, in connection with the First U.K. Judgment that "on balance I am not persuaded that [paragraph 21 of the Fidelity Guarantee] amounts to a prior agreement between the State and [Plaintiff]." Compl. Ex. H ¶ 18. Justice Moulder construed paragraph 21 to operate as an order directed toward the Central Bank and not to reflect a prior written agreement between the State and Plaintiff to waive sovereign immunity. *Id.* ¶¶ 16–19.[13]   That conclusion reflects an

---

effect of foreign decision in case involving claims for trademark and copyright infringement).

[12] "New York distinguishes between judgments rendered by her sister states, to which it is constitutionally obligated to give full faith and credit, and those rendered by foreign countries, which it will recognize only as a matter of comity." *Fairchild, Arabatzis & Smith,* 470 F. Supp. at 615; *see also Nippon Emo-Trans Co. v. Emo-Trans, Inc.*, 744 F. Supp. 1215, 1229 (E.D.N.Y. 1990) ("New York courts have consistently distinguished between judgments of sister states, which must be accorded full faith and credit as a matter of constitutional law, and judgments of foreign countries, for which full faith and credit is not constitutionally mandated." (citing *Schoenbrod v. Siegler*, 230 N.E.2d 638, 641 n.3 (N.Y. 1967))).  However, the tests for preclusion nonetheless remain the same for foreign and domestic judgments. *Id.*

[13] The First U.K. Judgment noted that the Fidelity Guarantee could be read as an agreement

23

interpretation of, and has significance with respect to, Section 2 of the U.K. Immunity Act. In particular, Section 2 of the U.K. Immunity Act provides in relevant part:

>  (1) A State is not immune as respects proceedings in respect of which it has submitted to the jurisdiction of the courts of the United Kingdom.

>  (2) A State may submit after the dispute giving rise to the proceedings has arisen or by a prior written agreement . . . .

In effect, if a foreign state has not submitted to the jurisdiction of the court after the dispute giving rise to the proceedings has arisen or by a prior written agreement, it enjoys sovereign immunity under U.K. law. The First U.K. Judgment did not purport to address the questions relevant to the FSIA—whether the waiver of sovereign immunity in the Fidelity Guarantee was anything other than clear and unambiguous and whether the waiver was limited to the courts of the United Kingdom.

It follows that the First U.K. Judgment is not preclusive of the issue presented here of whether the Nigerian Defendants' waiver of sovereign immunity is clear and unambiguous for the purposes of the FSIA. The Second Circuit has held that while the foreign court need not apply American law, for the issues to be identical, "the legal standards to be applied must . . . be identical." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 48 (2d Cir. 2014) (citation omitted); *see also China Shipping Container Lines Co. v. Big Port Serv. DMCC*, 803 F. App'x 481, 484 (2d Cir. 2020) (summary order) (same). The First U.K. Judgment relied only upon paragraph 21 of the Fidelity Guarantee and analyzed whether the document constituted a "prior written agreement" under the U.K. Immunity Act. First U.K. Judgment ¶¶ 14–19. By contrast, Plaintiff's waiver arguments here are made pursuant to the FSIA and rely additionally upon paragraphs 19 and 20 which waive immunity for actions to enforce a judgment. Dkt. No. 30 at 7–8. The FSIA does not

---

between Plaintiff and the Central Bank, but not as an agreement between Plaintiff and FGN. *Id.* ¶¶ 16–18.

share the U.K. Immunity Act's requirements that waiver be reduced to writing and that it take the form of an agreement.  Indeed, Congress noted that a foreign state may explicitly waive sovereign immunity pursuant to 28 U.S.C. § 1605(a)(1) by treaty or in contract with a private party and may implicitly waive sovereign immunity where it has filed a responsive pleading in the action without raising the defense of sovereign immunity.  *See* H.R. Rep. No. 94-1487, at 18 (1976); *Smith v. Socialist People's Libyan Arab Jamahiriya*, 101 F.3d 239, 243 (2d Cir. 1996) (recognizing implicit waiver may be affected through responsive pleading alone).  Because the issues are not identical, collateral estoppel does not apply to bar Plaintiff's waiver argument.  *See Dudley v. N.Y.C. Hous. Auth.*, 2017 WL 4315010, at *16 (S.D.N.Y. Sept. 25, 2017).

The Nigerian Defendants alternatively argue that because "Plaintiff's complaint incorporates the express terms of the U.K. Judgment as the substance of his complaint" the U.K. Judgment and its related findings "should be properly admitted by the court on this motion to dismiss."  Dkt. No. 22 at 12–14.  The Nigerian Defendants cite the axiom that on a motion to dismiss a complaint pursuant to Rule 12(b)(6), "the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted."  *Id.* (emphasis omitted) (citing *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994)).  But that is simply the same argument in a different form.  The Court may take notice of the content of the U.K. Judgments as presenting conclusions of United Kingdom law.  But it need not adopt—as a conclusion of U.S. law—the U.K. courts' conclusions of law.

Finally, the Nigerian Defendants' assertion of a sovereign immunity defense does not constitute a proper "withdrawal of the waiver" for the purposes of 28 U.S.C. § 1605(a)(1).  The statute provides that waiver will abrogate foreign sovereign immunity "notwithstanding any withdrawal of the waiver which the foreign state may purport to effect *except in accordance with*

25

*the terms of the waiver*." 28 U.S.C. § 1605(a)(1) (emphasis added). Thus, as courts in this District have held, "where a proper waiver does not contain a procedure for the future revocation of that waiver, a foreign state's waiver of jurisdictional immunity is irrevocable." *Themis Cap., LLC v. Democratic Republic of Congo*, 881 F. Supp. 2d 508, 516 (S.D.N.Y. 2012); *see also Dist. Att'y of N.Y. Cnty. v. Republic of the Philippines*, 307 F. Supp. 3d 171, 218 (S.D.N.Y. 2018) (same). "Once a foreign sovereign has waived immunity under § 1605(1), it may withdraw that waiver only as provided by the terms of the original waiver." *Themis Cap.*, 881 F. Supp. 2d at 516 (citing 28 U.S.C. § 1605(a)(1)). Because the Fidelity Guarantee does not provide any procedure for revoking the waiver therein, the waiver of jurisdictional immunity is irrevocable. *Id.*

Plaintiff adequately shows that the Fidelity Guarantee waived sovereign immunity and thus the Court has subject matter jurisdiction pursuant to section 1605(a)(1) of the FSIA.

### B.    Plaintiff Properly Served Defendants

Defendants argue that this Court lacks jurisdiction because Plaintiff failed to comply with the service requirements of 28 U.S.C § 1608(a). Dkt. No. 22 at 20–22. To bring an action against a foreign state under the FSIA, the Court need only find that an exception to sovereign immunity exists and that the state was properly served. *See Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 746 (2d Cir. 2000) (quoting *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1020 (2d Cir.1991)).[14]

Section 1608 of the FSIA "provides the sole means for effecting service of process on a foreign state." *Lovati v. Bolivarian Republic of Venezuela*, 2020 WL 6647423, at *2 (S.D.N.Y. Nov. 11, 2020); *see also* H.R. Rep. No. 94-1487, at 23 (1976) ("Section 1608 sets forth the

---

[14] "[F]oreign states do not enjoy due process protections from the exercise of the judicial power because foreign states, like U.S. states, are not 'persons' for the purposes of the Due Process Clause." *Gater Assets Limited v. AO Moldovagaz*, 2 F.4th 42 (2d Cir. 2021).

exclusive procedures with respect to service on . . . a foreign state or its political subdivisions, agencies or instrumentalities.").  Section 1608(a) reads:

> Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
>
> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

"Section 1608(a) prescribes a hierarchy of four alternative procedures to use when serving process on a foreign state or political subdivision." *Finamar Invs. Inc. v. Republic of Tadjikistan*, 889 F. Supp. 114, 116 (S.D.N.Y. 1995).  The second option may be used only when no special arrangement exists, the third option may be used only when service cannot be made under the first two options, and the fourth option may be used only when service cannot be affected under the first three options.

The Nigerian Defendants claim that Plaintiff's service in compliance with paragraph (3) was ineffective because a "special arrangement for service" existed between the Nigerian

Defendants and Plaintiff.   Dkt. No. 22 at 21–22 ("Pursuant to the agreement that existed between the parties regarding service, the only option available to Plaintiff for effectuating service in this action was the procedure set out in § 1608(a)(1)."); Dkt. No. 33 at 3–4.  Defendants point to the First U.K. Judgment's holding that "there is an existing arrangement for service of process between plaintiff and defendants, and that the parties agreed that service of process will be made to the Defendant through the Nigeria High Commission in London."  Dkt. No. 22 at 21 (citing First U.K. Judgment ¶¶ 21).

The Nigerian Defendants misconstrue the First U.K. Judgment.  The First U.K. Judgment did not find that there was a persisting special agreement for service that encompassed all potential suits and documents Plaintiff might ever serve upon the Nigerian Defendants.  The First U.K. Judgment found instead that a special arrangement existed with respect to service for the proceedings in London.  The First U.K. Judgment relied upon the affidavit Plaintiff submitted in the U.K. Action which stated that his lawyers in Nigeria advised him that AG-FGN suggested Plaintiff "should issue proceedings in London . . . and that the Nigerian High Commission in London would accept service of such proceedings."  Compl. Ex. F. ¶ 8.  The First U.K. Judgment stated that service in the underlying U.K. action was proper pursuant to a special agreement because Plaintiff's "lawyer in Nigeria had a conversation with the Solicitor General in Nigeria in February 2016, and according to the evidence of the claimant in that conversation the Solicitor General agreed to service of the proceedings by service on the High Commission in London."  First U.K. Judgment ¶ 21.  Both the First U.K. Judgment and the Second U.K. Judgment further relied upon an additional affidavit in which Plaintiff stated that he had a telephone conversation "with the High Commissioner and the Ambassador at the Nigerian High Commission" in which "he was told that the High Commission was instructed to accept service."  *Id.*; Second U.K.

Judgment ¶¶ 42–52, 56–61.  The U.K. Judgments thus did not find that a special arrangement for service existed with respect to this action nor does the evidence submitted in the U.K. Action reflect any such arrangement.  And Defendants do not identify any other special agreement for service.

"Because [P]laintiff[] had no 'special arrangement' for service with [Defendants] and because [Nigeria is not] a party to an 'international convention on service of judicial documents,' the preferred method of service is provided by section 1608(a)(3)—that is, any form of mail requiring a signed receipt."  *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 173 (D.D.C. 2006).[15]

Plaintiff has offered evidence that "[s]ervice was dispatched by the Clerk of the Supreme Court of the State of New York in and for the County of New York to the Federal Government of Nigeria . . . and to the Attorney General.  Dkt. Nos. 30-1, 30-2, 30-3, 30-4.  Plaintiff attached to his opposition to the motion to dismiss notarized affidavits prepared by the New York County Court Clerk as well as UPS receipts demonstrating that both deliveries were received and signed for.  *Id.*  This is sufficient.  *See de Sousa v. Embassy of Republic of Angola*, 229 F. Supp. 3d 23, 29 (D.D.C. 2017) ("given the certification by the Clerk's Office that the documents had been dispatched and the FedEx delivery receipt with a signature from the individual who accepted the package[,] . . . [t]he proof provided by the plaintiff satisfies the requirements of § 1608(a)(3)");

---

[15] *See Okolo v. Cross River State Gov't*, 2019 WL 10248104, at *2 (S.D.N.Y. May 31, 2019) (noting that service pursuant to 28 U.S.C § 1608(a)(2) is not possible because "Nigeria is not a signatory to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial matters").  Nigeria has not signed as a party to the Convention in the interim. *See* Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited August 10, 2024).

*Abur*, 437 F. Supp. 2d at 173 (similar).[16]  Thus, the Court finds service was proper and denies the Nigerian Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(5).

## II.     The Claims Against The Attorney General Of The Federal Government Of Nigeria Are Not Dismissed

### A.     Plaintiff Need Not Plead Personal Jurisdiction Under New York's Long-Arm Statute

Defendants argue that the Court does not have personal jurisdiction over AG-FGN because Plaintiff does not allege any fact showing AG-FGN "transacts any business in New York State or that the activities that generated his action" arose out of the transaction in New York State." Dkt. No. 22 at 23–24.  Although Plaintiff's brief in opposition to the motion to dismiss does not directly respond, the complaint states that "[a]lthough not required for this action pursuant to Article 53[17] to [r]ecognize and [e]nforce a foreign country judgment, the Nigerian Government Defendants are subject to personal jurisdiction in this Court because they maintain bank accounts in this County and engage in substantial activity here in Manhattan."  Compl. ¶ 16.

The New York Supreme Court, Appellate Division has held that "a party seeking recognition in New York of a foreign money judgment (whether of a sister state or a foreign country) need not establish a basis for the exercise of personal jurisdiction over the judgment debtor by the New York courts." *Lenchyshyn*, 723 N.Y.S.2d at 289; *see also Holmes v. Apple Inc.*, 2018 WL 3542856, at *5 (S.D.N.Y. July 23, 2018) (noting that a prior case "did not require the

---

[16] Such service also satisfies 28 U.S.C. § 1608(b)(3)(B) which provides for service upon an agency or instrumentality of a foreign state "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served."

[17] New York Civil Practice Law and Rules ("CPLR") Article 53 ("Article 53") is New York's version of the Uniform Foreign Country Money Judgments Recognition Act.  *See Lenchyshyn v. Pelko Elec., Inc.*, 723 N.Y.S.2d 285, 288 (4th Dep't 2001) (citations omitted).  Article 53 "codifies common-law principles applicable to recognition of foreign country judgments."  *Id.*

establishment of personal jurisdiction over [defendant] because it was a proceeding to domesticate a foreign judgment"), *aff'd*, 797 F. App'x 557 (2d Cir. 2019).[18]

In *Lenchyshyn*, the Fourth Department rejected the argument that a plaintiff could not enforce a foreign money judgment in the courts of New York "unless defendants have an actual current presence within the State or unless there is some other basis for New York's exercise of personal jurisdiction over defendants." 723 N.Y.S.2d at 290. The court there reasoned that "[i]n proceeding under [A]rticle 53, the judgment creditor does not seek any new relief against the judgment debtor, but asks the court to perform its ministerial function of recognizing the foreign country money judgment and converting it into a New York judgment," adding that "it is not inevitable or even likely that any enforcement device ultimately employed by the judgment creditor will operate against the judgment debtor in personam" as "[m]ost devices for the enforcement of money judgments operate in rem against the real or personal property of the judgment debtor, or in personam against third parties, such as banks, investment firms, employers, or other third-party garnishees, obligors or debtors of the judgment debtor." 723 N.Y.S.2d at 291; *see also AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 73 N.Y.S.3d 1, 1 (1st Dep't 2018) (holding that once defendants raise "colorable statutory grounds for denying the foreign judgment recognition[] . . . there must be either an in personam or an in rem jurisdictional basis for maintaining the recognition and enforcement proceeding against defendants in New York"); Restatement (Third) of Foreign Relations Law § 481 cmt. h ("an action to enforce a judgment may

---

[18] Because AG-FGN is sued only in an only in an official capacity and as an instrumentality of the State, *infra*, the Court may also have personal jurisdiction over AG-FGN pursuant to the FSIA, *see Reiss*, 235 F.3d at 746. However, that conclusion has not been argued by the parties, and the Court need not rest upon it.

31

SPA 31

usually be brought wherever property of the defendant is found, without any necessary connection between the underlying action and the property, or between the defendant and the forum").

Although New York courts have primarily avoided the label, "[t]ormented souls of first-year civil procedure will recognize this strain of jurisdiction as quasi in rem type II, where 'the plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 n.8 (9th Cir. 2002) (quoting *Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958)). The *Lenchyshyn* Court quoted favorably the United States Supreme Court's decision in *Shaffer v. Heitner*, that "[o]nce it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt *in a State where the defendant has property*, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter." *Lenchyshyn*, 723 N.Y.S.2d at 289 (emphases altered) (quoting 433 U.S. 186, 210 n.36 (1977)). "Quasi in rem jurisdiction is jurisdiction over designated property that results in a judgment affecting the interests of particular individuals in designated property . . . [and] is used primarily for two purposes: to secure a pre-existing claim in the designated property or to apply property of a defendant towards satisfaction of a judgment previously obtained against the defendant." *CME Media Enters. B.V. v. Zelezny*, 2001 WL 1035138, at *3 (S.D.N.Y. Sept. 10, 2001) (Chin, J.) (citing *Shaffer*, 433 U.S. at 199 & n.17); *see also Crescendo Mar. Co. v. Bank of Commc'ns Co.*, 2016 WL 750351, at *5 (S.D.N.Y. Feb. 22, 2016) ("an exception to th[e] general rule [against finding jurisdiction based on the mere presence of a defendant's property within a court's jurisdiction] applies where a petitioner seeks to recover on a judgment already adjudicated in a forum with personal jurisdiction over the respondent").

In effect, the *Lenchyshyn* court relied upon a form of *quasi in rem* jurisdiction. *See Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 825 (N.Y. 2009) ("When a debtor is neither a domiciliary nor a resident of New York—so that the creditor cannot obtain personal jurisdiction of the debtor—but owns assets in New York, courts have exercised jurisdiction over the debtor. This quasi in rem jurisdiction is subject to the due process restrictions outlined by the United States Supreme Court in *Shaffer* . . . ."). To the extent that a defendant has property in New York, a judgment creditor cannot avoid execution on that property by the expedient of avoiding personal jurisdiction in New York. And, to the extent that AG-FGN is a judgment debtor, the Court has the power to recognize the judgment against it.

If the defendant does not have property in New York, the recognition of the foreign judgment by a New York court will be of no effect. A sister-state is not obliged to give full faith and credit to a judgment entered by a court that does not require personal jurisdiction for its exercise of power and did not find the existence of personal jurisdiction. *See Ahmad Hamad Al Gosaibi & Bros. Co. v. Standard Chartered Bank*, 98 A.3d 998, 1006 (D.C. Ct. App. 2014) (holding that New York judgment recognizing a Bahraini judgment was not entitled to recognition in Washington D.C. because "when a state does nothing more than recognize a foreign country judgment, it lacks the type of interest that drives full faith and credit jurisprudence"); s*ee also Underwriters Nat. Assur. Co. v. N.C. Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 704 (1982) (recognizing as a "caveat" to the full faith and credit principles that "a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment" (quotation omitted)); *Alberta Sec. Comm'n v. Ryckman*, 2015 WL 2265473, at *8 (Del. Super. Ct. May 5, 2015) (Delaware court recognized Arizona judgment enforcing a foreign judgment, noting that the

case was distinct from *Ahmad* because in *Ahmad*, "[t]he New York Supreme Court did not have personal jurisdiction over the judgment debtor" whereas "[i]n this case, the Arizona courts had personal jurisdiction over Ryckman because Ryckman resided in Arizona."), *aff'd*, 127 A.3d 399 (Del. 2015); Restatement (Third) of Foreign Relations Law IV 8 Intro. Note ("no state recognizes or enforces the judgment of another state rendered without jurisdiction over the judgment debtor").

Plaintiff alleges AG-FGN "maintain[s] accounts with and held by the Central Bank of Nigeria and JPMorgan Chase &Co. in this County," Compl. ¶ 66.  To the extent that the AG-FGN is a judgment debtor, principles of personal jurisdiction present no obstacle to the Court's recognition of the judgment against it.

### B.    The Attorney General Of The Federal Government Of Nigeria Is Not Entitled To Dismissal On The Basis of Sovereign Immunity

Defendants argue that AG-FGN is entitled to common law foreign official immunity. Dkt. No. 22 at 24.  *See Samantar v. Yousuf*, 560 U.S. 305, 312 (2010) (holding that the FSIA codified sovereign immunity for foreign states but not for current or former foreign officials and therefore to ascertain whether an official may claim sovereign immunity, courts apply the common law's "two-step procedure when a foreign official assert[s] immunity").

However, the FSIA defines the term "foreign state" to "include[] a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).  Therefore, not only is the foreign state itself entitled to sovereign immunity under the FSIA, but so is an "agency or instrumentality" which the FSIA defines as "a separate legal person, corporate or otherwise" that "is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." 28 U.S.C. § 1603(b).  AG-FGN is one such organ.  *See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 2014 WL 2118712, at *1 (D.D.C. May 21, 2014) ("Defendants (the

34

Federal Government of Nigeria, Attorney General of the Federation, and Minister of the Interior) are a foreign state, or are agencies or instrumentalities of that state."); *Hilsenrath v. Swiss Confederation*, 2007 WL 3119833, at *3 (N.D. Cal. Oct. 23, 2007) ("The Office of the Attorney General is an agency or instrumentality of Switzerland"), *aff'd*, 402 F. App'x 314 (9th Cir. 2010).

Furthermore, in *Samantar*, the United Supreme Court noted that "it may be the case that some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest." 560 U.S. at 325 (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity . . . ." (citation omitted)). "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess." *Graham*, 473 U.S. at 167.

Here, Plaintiff has sued AG-FGN only in its official capacity, for the alleged wrongdoings of Nigeria itself. The complaint names AG-FGN "in [its] official capacity," Compl. ¶ 12, and alleges AG-FGN's role only as a judgment debtor in that official capacity. Beyond declining to name an individual, neither the complaint nor Plaintiff's Particulars of Claim in the U.K. Action allege any specific act undertaken by any Nigerian attorney general with respect to the underlying fraud. AG-FGN participated in the U.K. Action solely in its official capacity and the litigation conduct and outcome is attributable to the state rather than to any individual. Neither the Complaint nor the Particulars of Claim filed in the U.K. Action allege that AG-FGN's liability is any way unique from FGN's. Indeed, the Particulars of Claim's sole allegation pertaining specifically to AG-FGN states merely that AG-FGN "is the principal law officer of [FGN] and is the representative of [FGN] in all legal matters and lawsuits." Compl. Ex. A. ¶ 2.

Accordingly, AG-FGN is not the real party in interest and suit is "to be treated as a suit against the entity." *Samantar*, 560 U.S. at 325 (citation omitted); *see Gomes v. ANGOP, Angola Press Agency*, 2012 WL 3637453, at *19 (E.D.N.Y. Aug. 22, 2012), *aff'd sub nom. Gomes v. ANGOP*, 541 F. App'x 141 (2d Cir. 2013); *Rahim v. Sec'y, Establishment Div., Gov't of People's Republic of Bangladesh*, 2011 WL 3625580, at *2 (E.D.N.Y. Aug. 12, 2011), *aff'd*, 481 F. App'x 18 (2d Cir. 2012) (summary order); *Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, 2014 WL 288705, at *11 (S.D.N.Y. Jan. 27, 2014).  Because the suit is only nominally brought against AG-FGN, AG-FGN's immunity rises and falls with FGN's.  *See Graham*, 473 U.S. at 167.[19]  Thus, while AG-FGN may claim sovereign immunity under the FSIA, that immunity is abrogated by FGN's waiver on behalf of the Federal Government of Nigeria.

**III.    The *Forum Non Conveniens* Doctrine Does Not Support Dismissal**

    **A.    *Forum Non Conveniens* Does Not Provide A Basis For Dismissing An Action To Enforce A Foreign Judgment**

The Nigerian Defendants argue that this case should be dismissed in favor of a forum in the United Kingdom because "the Nigerian Government Defendants agreed in writing to submit to the Jurisdiction of the Courts of the United Kingdom for the underlying dispute between the Parties."  Dkt. No. 22 at 24–25 (quoting Compl. ¶ 18).  The Nigerian Defendants argue that where "the parties contractually agreed to submit their dispute to jurisdiction in the United Kingdom, there is a presumption of enforceability of the U.K. forum clause, unless the Plaintiff is able to

---

[19] AG-FGN need not be dismissed at this stage because where a plaintiff brings suit against multiple defendants that comprise a singular real party in interest, courts may permit the case to proceed as to all.  *See Pub. Adm'r of N.Y. Cnty. v. Royal Bank of Canada*, 224 N.E.2d 877, 877 (N.Y. 1967) (affirming denial of motion to dismiss where plaintiff named defendant corporation "once in the name by which it is generally known and, again, under the name by which it is known in France" such that "the two defendants are one and the same corporation"); *see also, e.g.*, *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 697 F. Supp. 2d 46, 56 (D.D.C. 2010) (allowing case to proceed against "the Attorney General of Nigeria, and the Minister of the Interior of Nigeria (collectively, 'Nigeria')" where exception to sovereign immunity under the FSIA applied).

36

rebut the presumption of enforceability." *Id.* at 25.  The Nigerian Defendants thus would limit Plaintiff to the United Kingdom for enforcement of Plaintiff's judgment and deny Plaintiff a New York court for the purpose of enforcing Plaintiff's judgment against New York assets.

The recognition of a foreign judgment by the courts of New York is governed by Article 53 of the CPLR.  Section 5304 of Article 53 lays out three grounds for mandatory nonrecognition of a foreign judgment and nine grounds for discretionary nonrecognition.  CPLR § 5304.  The mandatory grounds for nonrecognition include that "the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;" that "the foreign court did not have personal jurisdiction over the defendant;" and that "the foreign court did not have jurisdiction over the subject matter."  *Id.* § 5304(a).  The non-mandatory grounds include such matters as that the defendant did not receive notice of the proceeding in sufficient time to defend, that the judgment was obtained by fraud, that the judgment is repugnant to the public policy of New York or the United States, that the judgment conflicts with another final and conclusive judgment, that the judgment was not compatible with the requirements of due process, and that the "proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by a proceeding in that court."  *Id.* § 5304(b).  Only those enumerated grounds—which relate to the validity of the foreign judgment—allow a court to withhold recognition of a foreign judgment.  *See John Galliano, S.A. v. Stallion, Inc.*, 930 N.E.2d 756, 756 (N.Y. 2010) ("[A] foreign money judgment is to be recognized in New York under [A]rticle 53 unless a ground for nonrecognition under CPLR 5304 is applicable . . . ."); *Watary Servs., Ltd. v. L. Kin Wah*, 668 N.Y.S.2d 458 (1998).  "New York has traditionally been a generous forum in which to enforce

judgments for money damages rendered by foreign courts." *CIBC Mellon Trust Co. v. Mora Hotel Corp.*, 792 N.E.2d 155, 159 (N.Y. 2003), *cert. denied*, 540 U.S. 948 (2003).

Article 53 is based on the Uniform Foreign Money-Judgments Recognition Act, *id.* at 157, and comports with general principles of international law. Under those principles. "[c]ourts in the United States do not have general discretion under State law to deny recognition" to a judgment of a foreign court. Restatement (Fourth) of Foreign Relations Law § 484 (2018); *see also id.* ("[t]he grounds for not recognizing a foreign judgment listed in this Section . . . are the only permissible bases for a decision not to recognize a foreign judgment.").

Article 53 does recognize a form of *forum non conveniens* with respect to the underlying dispute giving rise to the judgment by providing that a court has discretion to decline recognition when the proceeding in the foreign court was contrary to an agreement between the parties that another forum would have exclusive jurisdiction. CPLR § 5304(b)(6); Richard C. Reily, Practice Commentaries, McKinney's Cons. Laws of N.Y. CPLR § 5304 ("The ground in paragraph 6 involves what is popularly known as an "ouster" agreement, whereby both sides stipulate that in the event of a dispute it shall be settled only in the courts of X, thereby purporting to "oust" every other forum of jurisdiction. If such other forum has assumed jurisdiction despite the ouster, its judgment can be refused recognition under paragraph 6"); *compare Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (holding that United States courts apply exclusive forum selection clauses as a form of *forum non conveniens*).

Tellingly, the law does not provide that a court may decline jurisdiction to recognize a judgment because it would be more convenient for the recognition action to be brought elsewhere. *See Abu Dhabi Com. Bank PJSC v. Saad Trading, Contracting & Fin. Servs. Co.*, 986 N.Y.S.2d 454, 459 (1st Dep't 2014) ("Dismissal of the action under the doctrine of forum non conveniens

was properly denied, because inconvenience is not one of the grounds for non-recognition specified in CPLR 5304."); *Watary*, 668 N.Y.S.2d 458 ("The grounds urged by defendant—that New York is an inconvenient forum and that necessary parties have not been joined in the New York action—do not fall within any of the grounds specified."). "[S]ince CPLR article 53 and the English court are already protecting the defendant's due process rights, including personal jurisdiction, the court charged with recognition and enforcement [is] not required to grant further protection during a ministerial enforcement action." *Abu Dhabi*, 986 N.Y.S.2d at 459.

The Second Circuit has held that principles of *forum non conveniens* apply to the request that an arbitration award be confirmed. *See Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*, 665 F.3d 384, 390 (2d Cir. 2011); *In re Arb. between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488 (2d Cir. 2002). A United States court has residual and inherent power to dismiss a lawsuit when a more convenient forum might be available. *See Carlisle v. United States*, 517 U.S. 416, 438 n.1 (1996) (Stevens, J. dissenting) ("We have held that a district court 'has inherent power to dismiss a suit pursuant to the doctrine of forum non conveniens.'" (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 502 (1947)); *Am. Dredging Co. v. Miller*, 510 U.S. 443, 450 (1994) ("[T]he problem of plaintiffs' misusing venue to the inconvenience of defendants 'is a very old one affecting the administration of the courts as well as the rights of litigants, and both in England and in this country the common law worked out techniques and criteria for dealing with it.'" (quoting *Gilbert*, 330 U.S. at 507)); *Schertenleib v. Traum*, 589 F.2d 1156, 1160 (2d Cir. 1978) (noting that federal district courts have "inherent power . . . to utilize [f]orum non conveniens"). The Second Circuit has held that neither the Inter-American Convention on International Commercial Arbitration (the "Panama Convention") nor the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York

Convention") trump that authority and prevent a court from exercising its authority to dismiss an action to confirm an arbitral award in the United States when another forum was more convenient.
[20] Both treaties require recognition only in accordance with the rules of procedure of the territory where the award is relied upon and *forum non conveniens* is a matter of procedure.[21]

However, a judgment of a foreign court is an entirely different creature than an award of a private arbitrator. *Cf. ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619, 632 (2022); *Webuild S.P.A. v. WSP USA Inc.*, 2024 WL 3463380, at *3 (2d Cir. July 19, 2024). An award of a private arbitrator accords no more than a contract right to the prevailing party. *See Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2024 WL 1724592, at *24 (S.D.N.Y. Apr. 19, 2024). Unless they are converted to judicial orders by courts, arbitral awards are not self-enforcing; the only consequence of non-compliance is a claim for breach of contract. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (quoting *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 63 (2d Cir. 2003)). A foreign judgment, by contrast, is the act of a foreign governmental body and it is entitled to respect as a

---

[20] There is some broad language in *Figueiredo Ferraz* rejecting the argument that a foreign forum cannot be considered inadequate on the grounds that "only a United States court may attach a defendant's particular assets located here." 665 F.3d at 390. But the Circuit made that statement in explaining that relegating the plaintiff to a Peruvian forum to obtain a judgment was permissible when that forum was more convenient than a United States forum. It cannot be understood to reflect the view that even after the plaintiff in *Figueiredo Ferraz* obtained a judgment from the Peruvian court, the plaintiff was prohibited from executing on that judgment in any country other than Peru. *See Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1319 (2d Cir. 1973) ("[S]ince the [New York Convention] itself and its enforcing legislation go only to the enforcement of a foreign arbitral award and not to the enforcement of foreign judgments confirming foreign arbitral awards, New York state law is not preempted to the extent that it permits, regulates and establishes a procedure for the enforcement of the foreign money judgment.").

[21] "Article 4 of the [Panama] Convention explicitly provides that execution of international arbitration awards may be ordered . . . in accordance with the procedural laws of the country where it is to be executed . . ., and [*forum non conveniens*] is a doctrine of procedure," thus making it an available defense pursuant to the text of the convention. *Figueiredo Ferraz*, 665 F.3d at 392 (citations omitted); *see also Monegasque*, 311 F.3d at 495 (same with respect to the New York Convention).

matter of comity.  *See Hilton v. Guyot,* 159 U.S. 113, 163–64 (1895).  Such recognition is necessary to "'foster[] the elements of stability and unity essential to an international order' through the enforcement of foreign judgments."  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 242 (2d Cir. 2012) (punctuation omitted) (quoting Arthur T. von Mehren & Donald T. Trautman, *Recognition of Foreign Adjudications: A Survey and a Suggested Approach*, 81 HARV. L. REV. 1601, 1602–03 (1968).  Without recognition, a judgment would be a meaningless piece of paper, enforceable only within the borders of the jurisdiction of the court that rendered it.

Indeed, the Nigerian Defendants' argument, if accepted, would have far-reaching consequences.  It is black letter law that a judgment once entered ordinarily can be enforced against any assets of the judgment debtor wherever located.  *See* Restatement (Third) of Foreign Relations Law § 481 cmt. h (noting that "once a judgment has been rendered in a forum having jurisdiction, the prevailing party is entitled to have it satisfied out of the judgment debtor's assets wherever they may be located"); *Shaffer*, 433 U.S. at 210; *Lenchyshyn*, 723 N.Y.S.2d at 291.  Although the judgment creditor must obtain recognition of the judgment from a court in a jurisdiction in order to execute against assets in that jurisdiction, the process is intended to be mechanical and routine.  *See CIBC Mellon Tr.*, 792 N.E.2d at 159 (A party seeking domestication under Article 53 "does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country judgment and converting it into a New York judgment.").  Unless recognition of the judgment would run afoul of the public policy of the state or the judgment was invalid pursuant to the grounds enumerated in CPLR § 5304, the state will recognize the judgment.  *See Greschler v. Greschler*, 414 N.E.2d 694, 694 (N.Y. 1980).  In the absence of recognition, the foreign judgment creditor cannot execute against assets in that jurisdiction; "[r]ecognition of a judgment is a condition precedent to its enforcement."

41

Restatement (Second) of Conflict of Laws 5 2 Intro. Note (1971); s*ee V'Soske, Inc. v. Vsoske.com*, 2003 WL 1747144, at *7 (S.D.N.Y. Apr. 1, 2003) (Chin, J.) ("No law has any effect . . . beyond the limits of the sovereignty from which its authority is derived." (quoting *Hilton*, 159 U.S. at 163–64)).

Thus, for example, a New York court—even if vested with jurisdiction through a forum selection clause—cannot permit a judgment creditor to execute upon real property located in the United Kingdom.  *See Rubin v. Eurofinance SA* [2012] UKSC 46 (U.K.) (discussing "in what circumstances, an order or judgment of a foreign court (on th[is] appeal[] the United States Bankruptcy Court for the Southern District of New York . . .) will be recognised and enforced in England").  A United Kingdom court likewise cannot permit a judgment creditor to execute upon real property located in New York.  *See Fundo De Recuperacao De Ativos - Fundo De Investimentos Em Direitos Creditorios Nao Padronizados v. Ceagro Agricola LTDA*, 180 N.Y.S.3d 4, 6 (1st Dep't 2022) ("a foreign judgment must be recognized (i.e., converted into a New York judgment) before it can be enforced").

But the Nigerian Defendants' argument would have the effect of converting a clause for the selection of the forum in which a dispute is to be resolved and a judgment issued into a clause for the protection of assets necessary to satisfy that judgment.  Under their argument, if the parties agree on a forum in which a dispute is to be resolved, they also necessarily would be agreeing to limit the assets available to satisfy the judgment awarded to the prevailing party in that dispute.  If the assets are outside the forum jurisdiction, they also are unavailable to the judgment creditor.  Put otherwise, the judgment debtor can avoid satisfying any judgment by the simple expedient of making its assets remote from the forum.   Unsurprisingly and revealingly, that objective bears no resemblance to the recognized purposes of a forum selection clause.

B.    **Even If The Doctrine Of *Forum Non Conveniens* Applied To An Action To Enforce A Foreign Judgment, It Would Not Warrant Dismissal In This Case**

Even if the Court were to apply the traditional *forum non conveniens* analysis, the doctrine would not weigh in favor of dismissal.

"A federal court has discretion to dismiss a case on the grounds of *forum non conveniens* when the chosen forum is oppressive or disproportionately inconvenient to the defendant, so long as there is an adequate alternative forum." *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 918556, at *4 (S.D.N.Y. Mar. 10, 2021) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)).  The decision "to grant or deny a motion to dismiss under the doctrine of *forum non conveniens* lies wholly within the broad discretion of the district court." *Scot. Air Int'l, Inc. v. Brit. Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).

Defendants argue that "Plaintiff's verified complaint establishes the existence of a contractual forum selection clause between the parties" and that such forum selection clause mandates Plaintiff proceed exclusively in U.K. courts.  Dkt. No. 22 at 24–25 (emphasis omitted) (citing Compl. ¶¶ 17–19).  A permissive forum selection clause such as the one the Nigerian Defendants identify here "only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007).[22]

The Court here need go no further than to determine whether an adequate alternative forum exists.  "To secure dismissal of an action on grounds of *forum non conveniens*, a movant must demonstrate the availability of an adequate alternative forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 157 (2d Cir. 2005) (citing *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 476

---

[22] The Fidelity Guarantee's only forum selection provision states "[i]t would be a matter for Dr Williams to make a choice of his forum for that purpose be it the UK or Nigeria *or any other country*."  Fidelity Guar. ¶ 21(i) (emphasis added).

43

(2d Cir.2002); *Iragorri v. United Techs, Corp.*, 274 F.3d 65, 73 (2d Cir. 2001)).  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  *Pollux Holding Ltd. V. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981); *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998)).

No other forum permits U.S. recognition of the U.K. Judgments, underscoring the inapplicability of the *forum non conveniens* doctrine to foreign judgment enforcement actions such as this one.  *See Fundo De Recuperacao*, 180 N.Y.S.3d at 6.  Because Defendants have failed to meet their burden to establish an adequate alternative forum, the Court need go no further and denies the motion to dismiss the complaint on *forum non conveniens* grounds.  *See PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998); *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 563 (S.D.N.Y. 2018).[23]

## IV.    The United Kingdom Judgment Is Final And Enforceable In The United States

Article 53 "applies to any foreign country judgment which is final, conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." CPLR § 5302.

The Nigerian Defendants argue that the First and Second U.K. Orders are not enforceable at this time.  Dkt. No. 22 at 28–29; Dkt. No. 31 at 16; Dkt. No. 33 at 2.  While the Nigerian Defendants' initial round of briefing claimed that the First U.K. Order was not yet enforceable due to the Nigerian Defendants' then-pending application to have the First U.K. Order set aside,

---

[23] In addition, one of the private interest factors customarily considered in a *forum non conveniens* analysis is the enforceability of a judgment if one is obtained.  *See Gilbert*, 330 U.S. at 508.  But a judgment of a U.K. court—even if one were willing to give it—permitting execution against assets in New York would not be enforceable in New York, without the further recognition of the U.S. court that Plaintiff seeks here.

Dkt. No. 22 at 28–29; Dkt. No. 31 at 16, the Second U.K. Judgment and Order's affirmance dispenses with that argument. The Nigerian Defendants' remaining argument is that the "prerequisite order to enforce the judgment (Final Third Party Debt[] Order [("TPDO")]) has not been issued" in the United Kingdom. Dkt. No. 22 at 28; Dkt. No. 31 at 16; Dkt. No. 33 at 2.[24]

The United Kingdom's Civil Procedure Rule 72 governs Third Party Debt Orders and "provide[s] for a judgment creditor to obtain an order for the payment to him of money which a third party who is within the jurisdiction owes to the judgment debtor." CPR 72.1.[25] Under the plain language of this rule, it is not apparent that a TPDO is required to render a judgment *enforceable* so much as it provides a mechanism through which to *enforce* a judgment against third parties in the United Kingdom. It is also unclear why a *Third Party* Debt Order would be required to make the judgment enforceable as to the Nigerian Defendants—both of which are direct parties to the U.K. Judgments rather than third parties.

The Nigerian Defendants cite site a single, inapposite case for the proposition that Plaintiff is required to apply for a TPDO for the First and Second U.K. Orders to become final, conclusive, and enforceable under English law. Dkt. No. 22 at 28 (citing *Overseas Dev. Bank in Liquidation*

_____

[24] Plaintiff does not engage with the argument, asserting broadly that the Second U.K. Judgment and Order supports Plaintiff's argument as to finality. Dkt. No. 32 at 2.

[25] Prior to the adoption of Rule 44.1, "foreign law was regarded as a fact and the party claiming that foreign law was applicable was required to prove it by competent evidence." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2444, (3d ed.); *see Liverpool & G.W. Steam Co. v. Phenix Ins. Co.*, 129 U.S. 397, 445 (1889) ("The law of Great Britain since the declaration of independence is the law of a foreign country, and, like any other foreign law, is [a] matter of fact, which the courts of this country cannot be presumed to be acquainted with, or to have judicial knowledge of, unless it is pleaded and proved."). Rule 44.1, however, now permits the court to "consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence" in determining foreign law. *See* Wright & Miller, Federal Practice and Procedure § 2444. Courts may conduct their own research into the foreign law. *See id.; see, e.g.*, *Katsoolis v. Liquid Media Grp., Ltd.*, 2019 WL 4735364, at *3 & n.2 (S.D.N.Y. Sept. 27, 2019).

*v. Nothmann*, 496 N.Y.S.2d 534 (2d Dep't 1985)). [26]  In *Overseas Development Bank*, plaintiff sought to enforce a judgment in violation of an English law that prohibited any action "brought upon any judgment after the expiration of six years from the date on which the judgment became enforceable." *Overseas Dev. Bank in Liquidation v. Nothmann*, 480 N.Y.S.2d 735, 739 (2d Dep't 1984), *rev'd*, 477 N.E.2d 1086 (N.Y. 1985) (citing Limitation Act 1980 § 24(1) (U.K.)).  In light of the fact that plaintiff had "permitted its judgments to become stale under English law," the Second Department held that the judgments were not enforceable but noted that seeking a writ of execution in the United Kingdom might permit plaintiff to revive the untimely judgments. *Id.*  The Second Department accordingly described the writ of execution as "an alternative method of enforcing a judgment in England." *Id. Overseas Development Bank* thus does not aid the Nigerian Defendants' argument as it suggests that the plaintiff's judgments would have been enforceable but for their age. *Id.*  No similar tardiness issues have been raised here.  Absent any basis to believe that the English judgment is unenforceable prior to issuance of a TPDO, the Nigerian Defendants have not offered the Court grounds to dismiss the complaint for failure to state a claim under Article 53.

---

[26] Defendants' remaining citations purport to state that Plaintiff bears the burden of proving the judgment is final, conclusive and enforceable. *See Dresdner Bank AG v. Haque*, 161 F. Supp. 2d 259, 263 (S.D.N.Y. 2001); *Bridgeway Corp. v. Citibank*, 45 F. Supp. 2d 276, 286 (S.D.N.Y. 1999) (Chin, J.), *aff'd*, 201 F.3d 134 (2d Cir. 2000).  However both cases arise in the summary judgment context and therefore do not provide the standard applicable to Defendants' motion to dismiss.

**CONCLUSION**

The Nigerian Defendants' motion to dismiss the complaint is DENIED.  The Clerk of Court is respectfully directed to close Dkt. No. 17.


SO ORDERED.

Dated: August 12, 2024
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge

47

SPA 47