# 24-2329-cv

# United States Court of Appeals

*for the*

# Second Circuit

———————————————

DR. LOUIS EMOVBIRA WILLIAMS,

*Plaintiff-Appellee*

~ v. ~

FEDERAL GOVERNMENT OF NIGERIA, ATTORNEY GENERAL OF THE
FEDERAL GOVERNMENT OF NIGERIA,

*Defendants-Appellants,*

CENTRAL BANK OF NIGERIA, JPMORGAN CHASE & CO., JOHN DOES 1-10,

*Defendants.*

———————————————

On Appeal from the United States District Court
for the Southern District of New York
No. 1:23-cv-07356 (Liman, *District Judge* Lewis J.)

## BRIEF FOR PLAINTIFF-APPELLEE DR. WILLIAMS

BARUCH S. GOTTESMAN
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
(212) 401-6910
*Attorney for Plaintiff Appellee*

1

## <u>NO CORPORATE DISCLOSURE STATEMENT REQUIRED</u>

   The Plaintiff-Appellee, Dr. Louis Emovbira Williams is a natural person and therefore no corporate Disclosure Statement is required.


Dated December 9, 2024


        By: <u>/s/ Baruch S. Gottesman</u>

**Table of Contents**

Page

No Corporate Disclosure Statement Required . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Counter-Statement of Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Counter-Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      I.     Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      II.   Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      II.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Summary of Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    Standard for Explicit Waiver of Sovereign Immunity . . . . . . 11

      B.    The Application of "English Law" . . . . . . . . . . . . . . . . . . . . . 14

      C.    Preclusive Effect of the UK Judgments on Immunity . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## Table of Authorities

**FEDERAL CASES**

*Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*,
600 F.3d 171 (2d Cir. 2010) ...................................................................10

*Atl. Tele-Network, Inc. v. Inter-American Dev. Bank*,
251 F. Supp. 2d 126 (D.D.C. 2003)........................................................15

*Capital Ventures Int'l v. Republic of Arg.*,
552 F.3d 289 (2d Cir. 2009) ...................................................................12

*Matar v. Dichter*,
563 F.3d 9 (2d Cir. 2009) .......................................................................10

No. 1:23-cv-07356 (Liman, District Judge Lewis J.)................................1

*Proyecfin de Venez., S.A. v. Banco Indus. de Venez., S.A.*,
760 F.2d 390 (2d Cir. 1985) ...................................................................12

*Roby v. Corp. of Lloyd's*,
796 F.Supp. 103 (S.D.N.Y. 1992) ..........................................................16

*Walker Int'l Holdings Ltd. v. Republic of Congo*,
395 F.3d 229 (5th Cir. 2004) ..................................................................12

*World Wide Minerals, Ltd. v. Republic of Kazakstan*,
353 U.S. App. D.C. 147...........................................................................12

**FEDERAL STATUTES**

Title 28 U.S.C. § 1605(a)(1)....................................................................11

**FEDERAL RULES**

Federal Rules of Appellate Procedure Rule 32(a)(5) ..............................21

Federal Rules of Appellate Procedure Rule 32(a)(6) ..............................21

Federal Rules of Appellate Procedure Rule 32(a)(7)(B).........................21

Federal Rules of Appellate Procedure Rule 32(f) ...................................21

Plaintiff-Appellee Dr. Louis Emovbira Williams (referred to in this Brief as the "Appellee" or "Dr. Williams") respectfully submits this Appellee Brief (the "Brief") in opposition to the Appeal and states as follows:

## PRELIMINARY STATEMENT

As noted by the Rt. Hon. Lord Sumpton in a parallel case involving the parties: "[t]he facts of this case can fairly be described as exotic, but few of them are relevant to the present appeal." *Williams v. Central Bank of Nigeria*, [2014] UKSC 10 [1].

That's true about this appeal as well.

The case here is a narrow, administrative proceeding to domesticate the UK Judgment ordered by the Honourable Mrs Justice Moulder of the High Court of Justice, Business and Property Courts of England and Wales, Commercial Court (Queen's Bench Division) under Docket Number CL-2016-000151 on November 9, 2018, [A-117-118] as supplemented by the Order of Mr Justice Bright of that same Court and under the same index number on December 19, 2023 [A-339-340] into a Judgment enforceable in New York.

The Plaintiff submits that the District Court ruled correctly on the Motion to Dismiss that the Defendants committed to a complete and irrevocable waiver of immunity. Therefore, the Defendants' appeal should be dismissed, and the matter should be sent back to Judge Liman for further proceedings on the merits.

## JURISDICTIONAL STATEMENT

The Plaintiff-Appellee respectfully adopts the Defendants-Appellants' jurisdictional statement and does not dispute this Court's jurisdiction over the appeal.

## COUNTER-STATEMENT OF ISSUES PRESENTED

The Plaintiff-Appellee would respectfully restate the Defendants-Appellants' characterization of the core issues presented as follows:

1.　　Does Nigeria's broad waiver of immunity in Paragraphs 18-21 of the Fidelity Guarantee bar any claim of immunity by the Appellants-Defendants in this case?

**Appellee's Position**: The Fidelity Guarantee bars a claim of immunity.

2.　　Did the Fidelity Guarantee bar enforcement of any Judgment in the United States?

**Appellee's Position**: The Fidelity Guarantee did not bar enforcement in the United States.

3.　　Do Mrs Justice Moulder's or Mr Justice Bright's decisions bar enforcement of the Judgment in the United States?

**Appellee's Position:** Justices Moulder and Bright's decisions do not bar enforcement of the Judgment in the United States.

## <u>COUNTER-STATEMENT OF THE CASE</u>

### I.    Factual Background

Toward the end of the Third Republic (the era of military rule in Nigeria through the 1980s and 90s) and as part of the transition to civil rule, General Ibrahim Radamasi Babangida, acting as President of Nigeria, pardoned Dr. Williams of certain crimes of which Dr. Williams had been convicted, Compl. ¶ 36 [A-14].  The General also ordered compensation to Dr. Williams of certain funds that were stolen from him by the government's agents, Compl. ¶ 37 [A-15].

That order was Gazetted, making those commitments the official policy of the Nigerian government and a binding obligation on the Defendants-Appellants to make the promised compensation, Compl. ¶ 36 [A-15].

Later, a Special Judicial Review Panel under the auspices of Chief Ernest Adegunle Oladeinde Shoenkan of the Interim National Government (ING) determined that Dr. Williams was:

> "completely, absolutely and totally innocent of the offences for which he was charged and that he ought not to have been charged and prosecuted in the first place."

and ratified General Babangida's pardon by confirming

> "all the exercises relating to Dr. Williams case . . . are invalidated retrospectively with immediate effect."

Compl. ¶ 39 *citing* Particulars of Claim at 9134(2) [A-15].

The ING adopted the recommendations of the Special Judicial Review Panel in full and the Presidency wrote to the Central Bank of Nigeria on September 14, 1993 and September 28, 1993 directing that $6,520,190.00 be returned to Dr. Williams at 17.5% annual compound interest, and N5,013,316.29 at 25% compound interest. Compl. ¶ 40, *citing* Particulars of Claim at ¶¶ 34(3) [A-15].

This commitment was reduced to writing in a formal "Fidelity Guarantee and Abiding Memorandum of Understanding of Assurance" (referred to in this litigation as the "Fidelity Guarantee") dated September 29, 1993. Compl. 41 [A-15, A-49].

The Fidelity Gurantee stated, and if the Court will indulge the citation here of the lengthy, detailed, and thoroughgoing waiver of immunity, we provide it here in full:

> "(19)  To the extent that the amounts in [the paragraph obligating payment] remain unpaid (together with interests and/or other legally permissible incidental addenda as ordered by court of competent jurisdiction or where agreement has been reached in respect of such financial incidentals) then any account upon which enforcement action is pursued be it in Nigeria or outside Nigeria shall be deemed to belong to Nigerian State and/or CBN less the amounts in [the paragraph obligating payment].

> "(20)  Therefore for the avoidance of doubt, both the Nigerian State and CBN must be deemed to have waived any immunity from levying of execution on amount kept in the name of CBN or State of Nigeria or any institution of Nigeria (save diplomatic) to the extent to which any amount in [the paragraph obligating payment] above remains unpaid.

"(21) In the unlikely event. if and when Dr Williams is constrained to take legal proceedings to secure and enforce the release of his monies in [the paragraph obligating payment] the FMG orders and CBN herein agrees that: -

"(i.)  It would be a matter for Dr Williams to make a choice of his forum for that purpose be it the UK or Nigeria or any other country;

"(ii.)  English Law is to apply in (21)(i.) above.

"(iii.) Neither the Nigerian State nor the CBN shall raise or invoke any defences so as to deprive Dr Williams of his monies in [the paragraph obligating payment] or make it financially onerous and burdensome such as requiring Dr Williams to deposit security for costs or suffer from CBN's objections or pleadings such as effluxion of time, acts of state, state privileges, state secrecy and state immunities and the like.  All these defenses and the like shall be deemed to have been waived without any equivocation and doubt whatsoever."

Fidelity Gurantee 19-21 [A-53].

Following the Judgment of Mrs Justice Moulder on November 9, 2018, [A-117] that awarded a financial Judgment in favor of the Plaintiff-Appellee, the Plaintiff-Appellee brought an action in New York State Court to domesticate the UK Judgment into an enforceable U.S. judgment pursuant to Article 53 of the C.P.L.R. [A-8].  Defendants-Appellants Removed this matter to the District Court and moved to dismiss on the basis of, *inter alia*, sovereign immunity [A-119].

Defendants' Motion was denied and the Defendants-Appellants appealed.

## II.    Procedural History

Plaintiff-Appellee adopts by reference the Defendants-Appellants' characterization of the Procedural History [Dkt. Entry 22.1, pp.22-23].

## III.    Standard of Review

The Second Circuit "reviews a district court's decision concerning subject matter jurisdiction under the FSIA for clear error as to factual findings, and de novo as to legal conclusions." *Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek (Persero)*, 600 F.3d 171, 175 (2d Cir. 2010) *citing Matar v. Dichter*, 563 F.3d 9, 12 (2d Cir. 2009).

The factual issues here are the relevant provisions of the Fidelity Guarantee, in which District Judge Liman read to include all of the provisions in Paragraphs 19-21 and as quoted above [SPA-2].

The key legal issues are the legal consequences of the waiver and the application (or lack thereof) of the "English Law" provision in ¶ 21(ii) of the Guarantee [SPA-11].

## SUMMARY OF LEGAL ARGUMENT

Broadly, the Plaintiff-Appellee adopts in full the decision of the District Court in its detailed and well-reasoned opinion. The argument here responds point-by-point to the core arguments presented by the Defendants-Appellants, which arguments primarily address the validity of the waiver of sovereign immunity.

The Plaintiff-Appellant remains available to provide supplemental briefing on any issue for which the Court may seek further explanation and to answer any questions the Court may have at oral argument.

## LEGAL ARGUMENT

### A.    Standard for Explicit Waiver of Sovereign Immunity

The Foreign Sovereign Immunity Act provides:

> "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case-
>
>> "(1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign may purport to effect except in accordance with the terms of the waiver."

28 U.S.C. § 1605(a)(1).

The Second Circuit confirmed that while a sovereign defendant may want to argue that "to be explicit, a waiver must contain a reference to the United States or a specific jurisdiction within the United States. We [, the Second Circuit,] do not

find such a requirement in the cases." *Capital Ventures Int'l v. Republic of Arg.*, 552 F.3d 289, 294 (2d Cir. 2009).

*Capital Ventures* found a waiver to be explicit and effective when contained in an Offering Circular that said that:

> "To the extent that the Republic has or hereafter may acquire any immunity (sovereign or otherwise) from jurisdiction of any court or from any legal process [], with respect to itself or its revenues, assets or properties, the Republic hereby irrevocably waives such immunity in respect of its obligations under the Bonds to the extent it is permitted to do so under applicable law."

*Capital Ventures Int'l*, 552 F.3d at 291. Even though the Offering Circular expressly provided for venue in the District Court (Landgericht) in Frankfurt am Main or the Argentinian Federal Courts at the City of Buenos Aries, the broad waiver of sovereign immunity was global.

*Capital Ventures* collected cases from sister circuits that confirmed a global waiver of sovereign immunity would be deemed explicit with respect to the United States even absent a specific reference to the U.S., *See Capital Ventures, Int'l*, 552 F.3d at 294-95 *citing Proyecfin de Venez., S.A. v. Banco Indus. de Venez., S.A.*, 760 F.2d 390, 393 (2d Cir. 1985); *Walker Int'l Holdings Ltd. v. Republic of Congo*, 395 F.3d 229, 234 (5th Cir. 2004); *World Wide Minerals, Ltd. v. Republic of Kazakstan*, 353 U.S. App. D.C. 147, 296 F.3d 1154, 1162 & n.13 (D.C. Cir. 2002).

In this case, the waiver of sovereign immunity was explicit and global.

Paragraph 19 said that if the funds remain unpaid, "then any account upon which enforcement action is pursued, be it in Nigeria or outside Nigeria, shall be deemed to belong to Nigerian State and/or CBN." No limitation – if Dr. Williams can find an account belonging to the government or the CBN, he can seize its funds.

Paragraph 20 confirmed "for the avoidance of doubt" that the government and CBN "must be deemed to have waived any immunity from levying of execution on amount kept in the name of CBN or State of Nigeria or any institution of Nigeria (save diplomatic) to the extent to which any amount in [the paragraph obligating payment] above remains unpaid."

Paragraph 21(i.) further discusses enforcement and confirms that Dr. Williams can choose to choose his forum for enforcement "in the UK or Nigeria or any other country".

Last, Paragraph 21(iii.) commits Nigeria and CBN to

> "[not] raise or invoke any defences so as to deprive Dr Williams of his monies in [the paragraph obligating payment] above or make it financially onerous and burdensome such as requiring Dr Williams to deposit security for costs or suffer from CBN's objections or pleadings such as effluxion of time, acts of state, state privileges, state secrecy and state immunities and the like. All these defenses and the like shall be deemed to have been waived without any equivocation and doubt whatsoever."

No equivocation. No Doubt. The waiver of sovereignty could not be clearer.

### B.    The Application of "English Law"

Defendants-Appellants next argue that the Guarantee's reference to the election of "English Law" for certain limited purposes obviated any waiver of sovereign immunity in the United States [Dkt. Entry 22.1 25-27].

As an initial matter, the waiver in this case is multiple-fold.  The "English law" provision applied only to legal proceedings to secure and enforce the Guarantee.  Under those circumstances, the applicable law would be English, which would apply wherever Dr. Williams' elects as his "choice of forum for that purpose be it the UK or Nigeria or any other country".

But aside from Paragraph 21(i.), Paragraph 20 provides a waiver of "any immunity", Paragraph 19 provides for enforcement against "any account . . . be it in Nigeria or outside Nigeria", and Paragraph 21(iii.) provides the State and CBN shall not:

> "raise or invoke any defences so as to deprive Dr. Williams of his monies . . . [or cause him to] suffer from CBN's objections or pleadings such as effluxion of time, acts of state, state privileges, state secrecy and state immunities and the like.  All these defenses and the like shall be deemed to have been waived without any equivocation and doubt whatsoever."

Paragraph 21(iii).

Paragraphs 21(iii), 20 and 19 provide a global waiver that is unrelated to the question of which jurisdiction is used for the initial lawsuit, which in this case proceeded in London under English Law.

Second, even if the English Law provision were an issue for any enforcement action post-Judgment, that rule would apply – by the text of the Guarantee – to the choice of law only. Not to the question of venue or jurisdiction.

Contrast that to the cases cited by the Appellant-Defendants. In *Atl. Tele-Network, Inc. v. Inter-American Dev. Bank*, 251 F. Supp. 2d 126 (D.D.C. 2003) the underlying agreement provided:

> "16.1 Governing Law - This Agreement shall be construed under and in accordance with the laws of Guyana.
>
> "16.2 Waiver of Sovereign Immunity - The Government agrees to waive any defense of sovereign immunity and consents to suit, if necessary, to resolve disputes concerning the interpretation of this Agreement.
>
> "16.3 Submission to Jurisdiction - For the purpose of resolving disputes regarding this Agreement, or arising therefrom, the Government, ATN and GT&T shall submit themselves to the jurisdiction of the courts of Guyana."

*Atl. Tele-Network Inc.*, 251 F.Supp.2d at 133. The Plaintiff brought a direct case against the IADB, the government of Guyana and other parties. The District Court interpreted the express agreement to submit the case to Guyanese Courts under Guyanese law to be binding notwithstanding "significant problems with the Guyanese legal systems, including delays, and potential corruption" *Atl. Tele-*

*Network Inc.*, 251 F.Supp.2d at 137, and District Judge Jackson did not read the waiver of sovereignty as a reed upon which to hang a right to sue in the U.S.

That is nothing like our case. In this case, the "choice of forum" was expressly left to the choice of Dr. Williams. He was given the discretion to elect whichever jurisdiction suited him, "be it the UK or Nigeria or any other country".

In addition, this action is not an original claim to enforce the underlying Guarantee. This case has already gone to Judgment. This is an administrative action to domesticate the Judgment already entered by the UK Courts. As Judge Liman wrote, "[a] foreign judgment, by contrast, is the act of a foreign government body and is entitled to respect as a matter of comity. Such recognition is necessary to foster the elements of stability and unity essential to an international order through the enforcement of foreign judgments." [SPA-40] (internal citations, quotations and emendments omitted).

It would be senseless for "English Law" to push aside Article 53 (New York State's version of the Uniform Foreign Country Money Judgments Act) which is the procedural vehicle by which foreign judgments are domesticated in New York.

The other case cited by the Appellants-Defendants *Roby v. Corp. of Lloyd's*, 796 F.Supp. 103, 106 (S.D.N.Y. 1992), stands for the entirely pedestrian observation that when parties agree to the application of English law, the Court will use English law to determine the legal status of parties. Nothing in *Roby* establishes a principal

the potential application of English law to some limited aspect of a dispute, somehow vitiates the ability to domesticate a foreign judgment in the United States.

For these reasons and as reasoned by Judge Liman, nothing in the Guarantee's reference to "English Law" limits the jurisdiction of the Courts of the United States over the domestication and enforcement of the UK Judgment.

### C.   <u>Preclusive Effect of the UK Judgments on Immunity</u>

The Defendants-Appellants' other argument is that the UK Judgments established as a matter of law that the Defendants-Appellants have not waived sovereign immunity.  As Judge Liman concluded, that argument is not correct.

 To recall, there were two UK Judgments at issue in this case.

The First Judgment was by Mrs Justice Moulder.  Dame Moulder found that Nigeria was not entitled to sovereign immunity because of the underlying fraud.

Only *after* the Court found that "to the extent that there is immunity by virtue of section 3(1) in relation to the underlying fraud claim, that is sufficient for the claimant to satisfy that test." First Judgment at ¶ 20 [A-114], the Cout speculated that one other potential basis for immunity could potentially be Section 2 of the UK's State Immunity Act, which allows States to waive immunity by submitting to jurisdiction or by agreement, First Judgment at ¶ 14 [A-113] *citing* UK State Immunity Act at § 2(1) and (2).  She concluded that the waiver in Paragraph 21 of

the Gurantee was ambiguous as to its scope and would not be read as a written waiver of sovereign immunity, First Judgment at ¶ 18 [A-114].

Now to be clear:

*First*, the Statement by Mrs Justice Moulder is *dicta*. The First Judgment stands based on Section 3 of the State Immunity Act, which was "the primary basis which was advanced for the claimant" and which "falls within the definition of a commercial transaction entered into by the State" First Judgment ¶ 15 [A-113].

*Second*, Judge Moulder did not make a final decision on the issue. She wrote, "[w]hilst it seems to me that the language has some ambiguity, on balance I am not persuaded that section 21 amounts to a prior agreement between the State and the claimant." First Judgment ¶ 18 [A-114]. A judge speculating about an argument in the alternative and noting that she is "not persuaded", is insufficient on a Motion to Dismiss to say that collateral estoppel attached.

*Third*, the Court was clear that they only looked at Paragraph 21 as it related to specific affirmative Defenses raised in the context of the action for an original Judgment. In this case, with the Judgment already entered, the waivers in Paragraphs 18 and 20 relating to *collections* are at play. And those issues related to collections were never before the UK Court. That is also true of the first section of Paragraph 21(iii.) related to waiver of raising any "onerous defense".

Simply put, there can be no argument of collateral estoppel as it relates to Paragraphs 18 and 20 and the first section of Paragraph 21(iii.), which were never at issue in the UK case. A proceeding to domesticate a Judgment in the UK and enforce a Judgment that has already been entered is an entirely distinct issue from the underlying proceeding in the UK for the original judgment.

*Fourth*, and most importantly, the issue of whether a party waived sovereign immunity and may be subject to jurisdiction before a Court is not some platonic legal issue that has global and universal answer. To the contrary, Mrs Justice Moulder assessed the specific application of the UK State Immunity Act § 2(1) and (2) to the agreement before her. As Judge Liman wrote, "the First U.K. Judgment did not decide an issue identical to the one raised by the parties here." [SPA-23]. "The First U.K. Judgment did not purport to address the questions relevant to the FSIA— whether the waiver of sovereign immunity in the Fidelity Guarantee was anything other than clear and unambiguous and whether the waiver was limited to the courts of the United Kingdom." [SPA-24].

The Second Judgment was by Mr Justice Bright. He wrote, in deciding a Motion brought by the Defendants-Appellants which argued for immunity, *See* Second Judgment ¶ 65 [A-338]:

> "I would only add that, given the terms of the trust
> agreement that is central to Dr Williams's complaint – i.e.,
> that the funds guaranteed by him were to be held on trust
> by a trustee in England, acting on behalf of the Federal

Government of Nigeria – it also seems to me to fall within section 3(1)(b)."

In other words, on a Motion premised on sovereign immunity brought by the Defendants-Appellants themselves, the UK Court issued a conclusive decision that the immunity *was* waived based on the terms of the Guarantee. So if we are to rely on the preclusive effect of decisions in the UK (with respect to the UK State Immunity Act) as it relates to to U.S. Law (FSIA), that preclusive effect would cut the other way – it would show that the Defendants-Appellants had expressly waived their sovereignty in writing with respect to the enforcement of the Guarantee.

## <u>CONCLUSION</u>

For these reasons the Plaintiff-Appellee respectfully submits that the Appeal should be denied and the matter remanded to Judge Liman for a resolution on the merits.

Dated: **December 9, 2024**

RESPECTFULLY SUBMITTED,

By:

Baruch S. Gottesman, Esq.
New York Bar No. 4480539
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
bg@gottesmanlegal.com

## **CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App.P. 32(a)(7)(B) because this brief contains 3,488 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-pt Times New Roman using Microsoft Word.

Dated: **December 9, 2024**

By: /s/ Baruch S. Gottesman

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 14, 2024, I docketed this corrected version of the Brief (with page numbers updated) with the ACMS system with a copy sent to all Counsel of record through ACMS.

Dated: **December 14, 2024**

By: <u>/s/ Baruch S. Gottesman</u>